[Civ. No. 14222. Second Dist., Div. One. Dec. 10, 1943.]

GERALDINE HASTINGS, a Minor, etc., Respondent, v. FRANK SERLETO, JR., a Minor, etc., et al., Appellants.

Parker & Stanbury and Harry D. Parker for Appellants.

David Spaulding for Respondent.

WHITE, J.—This action was instituted by the minor plaintiff through her guardian *ad litem* to recover damages for personal injuries sustained by her while she was riding as a guest in an automobile driven by the minor defendant Frank Serleto, Jr. Frank J. Serleto and Gertrude M. Serleto, parents of the minor defendant, having signed and verified his application for a driver's license, were also joined as parties defendant.

Trial before a jury resulted in a verdict in favor of plaintiff for the sum of $5,000 against the minor defendant and for a like amount against his parents. From the judgment entered upon such verdict, defendants prosecute this appeal.

The evidence as reflected by the record shows that on the evening of August 30, 1942, the minor plaintiff, then of the age of 14 years, was seated in a confectionery store consuming a drink of Coca-Cola. The minor defendant and his companion, Wilkie Richardson, had spent the afternoon from about the hour of 3:30 o'clock in a bowling alley in Westwood Village. The minor defendant had under his control and was driving a 1938 Buick Club coupe automobile. About 7:30 o'clock in the evening the minor defendant and his companion entered the confectionery store. The defendant was unacquainted with plaintiff, while Wilkie Richardson had a slight acquaintance with her. At the time of the accident the minor defendant was 18 years of age and his companion was approximately 20. Plaintiff accepted an invitation to go for a ride in the automobile with the two young men. Shortly after embarking on the trip a stop was made and some beer

was purchased by Richardson. After driving a short distance away, the beer was consumed and thereafter another stop was made for the purpose of purchasing more beer. It was established that two or three bottles of beer were purchased on the occasion of the first stop and one bottle on the second. Following the accident, one unbroken quart-size beer bottle was found in the automobile. After the second purchase of refreshments, plaintiff heard the minor defendant state that he knew "a short cut," and followed this remark with the statement to Wilkie Richardson, "I know a good spot." During the drive after the second purchase of beer, plaintiff testified she paid little attention to the direction in which the car was headed or to the manner of driving, but testified that she knew they were rounding curves because "I could feel it as we went around them." She further testified that she had not noticed the manner in which the minor defendant was driving until, while making a turn just before the curve on which the accident occurred, she became "uneasy, or nervous, about the manner in which he was driving." Just about the time she became aware of the fact that the car was moving at a very fast rate of speed, she heard Mr. Richardson shout "Slow down, Frank, and watch out for that tree." She further testified, "the next thing I knew I saw the tree and the steering wheel jumped up, and that is all I remember."

The accident occurred on Mandeville Canyon Road in the city of Los Angeles, which road branches off from Sunset Boulevard and leads into, but not through, the Santa Monica Mountains. It is a narrow, winding road, 23 feet wide. The place where the accident occurred is approximately three miles from Sunset Boulevard and is about ten blocks from where Mandeville Canyon Road ends.

According to the testimony of two police officers, they, in answer to a call, travelled to the scene of the accident where they found the Buick automobile, driven by the minor defendant, against a tree, about seven feet to the east, or right, of the edge of the pavement. The tree had several trunks branching from the ground. The trunks rise at an angle. The automobile had hit the tree and the angle of the trunks. The momentum of the vehicle and the angle of the tree-trunks had buried in the ground the front end of the car, including the knee-action units and the oil pan, clear back to the transmission. The steering wheel had gone through the windshield just below the top edge. The entire front end of the vehicle

was caved in, the left front wheel had been set back and all the attachments on the left front end of the frame had been loosened and set back. The instrument board on the automobile had been bent into a ''V'' shape, while the glass on the speedometer was broken, the needle of which was stopped at 65 miles per hour. The gear shift lever which extends up from the floor had been bent down and was lying on the floor for its entire length, being tangled with plaintiff's limbs. The post that divides the two parts of the windshield had been knocked loose and had been pushed down. The rear wheels were locked. The right front fender of the car was damaged where it struck the wall. The right rear end of the car had left the ground and hit a stone wall approximately three feet off the ground. Some parts of the automobile were found at a distance ranging from 50 to 60 feet in front of the vehicle while other parts thereof were picked up at a distance of some 83 feet.

The canyon in which the accident occurred is steep-walled and very narrow at the scene of the impact. On the night in question the canyon was very dark, the last street light having been passed about a mile prior to the collision. There were other vehicles on the canyon road that night, and as to curves, the road is substantially the same from its inception at Sunset Boulevard. A police officer testified that while making an inspection at the scene on the day following the accident he observed tire marks and tire burns leading from the scene of the impact back to a point 250 feet from the point of impact. At a point 59 feet from where the automobile came to rest it had left the highway on the driver's right side, climbed an almost perpendicular bank, slid along the bank sideways and then came to the level portion of a garden and on to the final impact. According to the police officer, the tire burns observed by him indicated that the vehicle was driven at a high rate of speed and while advancing forward was careening or swaying to the right. It is also in evidence that defendant driver knew that the road upon which he was driving was a narrow, winding mountain road. He had been over this road before, he was familiar with the fact that the turn where the accident happened was a double turn and he knew that the paved highway ended a short distance from where the collision occurred and that the road itself terminated entirely about 10 blocks ahead. He was familiar with the fact that there were trees on both sides of the road, close

to the edge of the highway, and that but a short distance from the point of collision the road divided and that a large tree stood in the middle thereof.

The evidence shows without conflict that there was no quarrelling between any of the parties prior to the accident, that there had been no arguments between any of them nor any acrimonious discussion. They were all friendly toward each other up to the instant of the accident.

The minor defendant driver testified that at the time his vehicle ran off the road he was driving at a speed of about 35 miles per hour.

With reference to the time just preceding the happening of the accident, the minor plaintiff testified she did not pay any attention to the speed of the car until just prior to the happening of the accident when, she testified, she "was afraid" of the manner in which the minor defendant was driving. In that connection the record reflects the following: "Q. What were you doing? A: I was busy with Wilkie. Q: You were in his embrace, were you? A: Yes, sir."

In describing the events leading up to and at the time of the accident, the minor defendant testified "Well, we got almost up to the 3100 block and when we were entering near to the point, I turned my head for a second to see what Geraldine and Wilkie were doing and at that moment I went off the road, and Wilkie shouted, 'Watch out, Francis. There is a tree,' but I was on the shoulder, in the dirt, and when I turned the wheel nothing happened. The car just kept sliding toward the tree, and that is all I remember."

The first contention made by defendants on this appeal involves the issue of whether the evidence is such as to warrant a finding of wilful misconduct so as to make the driver of the guest car, or those legally liable for the conduct of such driver, answerable in damages under the provisions of section 403 of the California Vehicle Code.

▮ Various definitions of the phrase "wilful misconduct" as used in our so-called guest statute, appear in the many cases wherein there arose occasion to consider the same. In the case of *Meek* v. *Fowler*, 3 Cal.2d 420 [45 P.2d 194], our Supreme Court adopts as satisfactory the definition in *Turner* v. *Standard Oil Co.*, 134 Cal.App. 622, 626 [25 P.2d 988], wherein it is said that " 'wilful misconduct,' within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should

not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.'' In the same case it is further said ''The case of *Howard* v. *Howard,* 132 Cal.App. 124, 128 [22 P.2d 279], after defining gross negligence as set forth in *Krause* v. *Rarity,* 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416 [185 P. 510], declares that '*The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.*'

''While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another *or to do an act with a positive, active and absolute disregard of its consequences.* [Italics ours.] It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. *But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct* implies at least the intentional doing of something either with *a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act* with a wanton and reckless disregard of its possible result. [Italics ours.]''

While it is true that the mental state of the driver is extremely important and that there must exist in the mind of

the driver intentional misconduct coinciding with knowledge of, or indifference to, the probability of injury, nevertheless it is equally well established that the state of a person's mind can rarely, if ever, be shown by his own statements or testimony. To meet this situation we have in this state a very common sense rule announced in section 21 of our Penal Code that ''The intent or intention [with which an act is done] is manifested by the circumstances connected with the offense. . . .'' In the instant case therefore, we must examine the circumstances connected with the claimed wilful misconduct on the part of defendant driver to determine whether they are of such a nature as to disclose the requisite and necessary elements that are essential to support a charge of wilful misconduct; viz., (1) the intentional doing of something with a knowledge that serious injury is a probable (as distinguished from possible) result; (2) the intentional doing of an act with a wanton and reckless disregard of its possible result. The first of the above mentioned alternatives, the doing of an act with knowledge of its probable results, is qualified by the cases to the extent that the knowledge may be either express or implied or in other words there must be actual knowledge, or that which in contemplation of law is regarded and deemed to be the equivalent of actual knowledge (*Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 727 [125 P.2d 586]).

With reference to what actions, behavior and conduct amounts to wilful misconduct, we think it may fairly be said to envisage something more than ordinary or even gross negligence, but less than the conventional intentional tort such as trespass, assault and battery. Existing as it does in the shadowy realm between the two well established classes of so-called ordinary negligence and intentional wrong doing, the various terms which have from time to time been used to describe conduct which falls within that intermediate zone adds to the difficulty of applying the rules governing wilful misconduct to a given set of facts. We are impressed that in the consideration of cases arising out of section 403 of the Vehicle Code the interpretation to be given actions and conduct of a defendant must turn on the circumstances of the individual case, and that the decisions passing upon facts deemed sufficient or insufficient to sustain a verdict or judgment can be of little assistance other than to announce the definition of the terms and phrases used in the statute. For

instance, it has been held that the violation of a statutory duty alone does not constitute wilful misconduct (*Porter* v. *Hofman*, 12 Cal.2d 445 [85 P.2d 447]); that speed alone, or inattention to the roadway alone, do not constitute wilful misconduct (*Stacey* v. *Hayes*, 31 Cal.App.2d 422 [88 P.2d 165]); and that colliding with a car at an intersection while driving 60 miles per hour was not wilful misconduct (*McCann* v. *Hoffman*, 9 Cal.2d 279 [70 P.2d 909]). Neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence amounts to wilful misconduct (*Howard* v. *Howard*, 132 Cal.App. 124, 129 [22 P.2d 279]). In the case just cited it was said. "Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result."

We, therefore, conclude that a defendant driver is guilty of wilful misconduct if he intentionally does an act with wanton and reckless disregard of its possible result. Vehicle Code section 505 defines reckless driving as the driving of a car "in . . . a wilful or a wanton disregard for the safety of persons"; and in the case of *People* v. *Young*, 20 Cal.2d 832, 837 [129 P.2d 353], the Supreme Court approves of the conclusion reached by the superior court, sitting as an appellate tribunal, in *People* v. *McNutt*, 40 Cal.App.2d Supp. 835 [105 P.2d 657], that reckless driving and wilful misconduct as specified by the Vehicle Code are the same. Furthermore, it has been stated that: "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him. (Restatement, Torts, sec. 500)." In the case of *People* v. *Young, supra,* at page 837, the Supreme Court holds that there is no substantial difference between the description "wilful or wanton" and "reckless."

Therefore, the question of whether the defendant driver herein intentionally drove his automobile with a wanton

and reckless disregard of the possible result of such driving or whether he intentionally drove his automobile with a knowledge, express or implied, that serious injury would be a probable (as distinguished from a possible) result thereof, is essentially one of fact for determination by the fact finder. And the problem presented to us on appeal is to determine whether there is in the record any substantial evidence to justify the finding by the jury that the actions and conduct of defendant driver amounted to a course of conduct which included the intentional doing of one or more things with a wanton and reckless disregard of the possible result or whether his conduct was intentional and such as, under the circumstances present, he is charged with knowledge, express or implied, that as a result of his recklessness or wantonness, injury to others would be the probable (as distinguished from the possible) result.

In the case with which we are here concerned, we feel that both queries must be answered in the affirmative. In the instant case we are confronted with the spectacle of a driver who is acquainted with the road over which he was driving, a road that he knew was a narrow, winding mountain road, which led into but not through the mountains. He was aware that the turn where the accident happened was a double turn and that the paved highway ended at about the scene of the disaster, while the road in its entirety ended about ten blocks ahead. He knew there were trees on both sides of the road close to the edge of the highway; that but a short distance from the scene of the accident the road was divided with a large tree standing in the middle. The driver was aware of the fact that the canyon was steep-walled and that he had passed the last street light and was traveling in a canyon that was very dark. That he had knowledge of the presence of other vehicles on the road is shown by the fact that he had passed two or three within the distance of a few miles. Possessed of this knowledge and after having consumed some intoxicating liquor, defendant driver drove his car first off the left side of the road, where he barely missed striking a large tree, then off the right side of the road. His car was driven in such a manner that it climbed up an almost perpendicular bank, slid along sideways, then on a garden for 59 feet before striking a tree with force and violence concededly tremendous. The speedometer on the car, after

the collision, was found broken with the needle pointing at 65 miles per hour. We are persuaded that the jury was justified in concluding, as apparently it did, that notwithstanding defendant driver's knowledge of the road over which he was traveling and its hazards, he knowingly, deliberately and intentionally flirted with danger. The jury, we feel, were also authorized to conclude that any reasonable person knowing what the defendant driver knew and seeing what he saw, and confronted with the conditions which confronted him, would have realized that such wanton and reckless driving could result only in injury to those who were riding in the automobile, and certainly the jury was authorized, under the facts here present, to conclude that defendant driver was charged with the implied knowledge of not only the possible but the probable results of such conduct.

■ Appellants contend that the only recklessness, if any, shown on the part of defendant driver was the speed of his vehicle and that, standing alone, is not sufficient to sustain a charge of wilful misconduct. However, of necessity the question of speed must be considered in connection with the type of the highway on which the speeding vehicle travels; the width of such highway, its surface and the presence or absence of traffic upon it. Then, too, there is the factor of visibility. In the instant case the car was not only traveling after dark in the manner hereinbefore referred to, but was driven in extreme darkness through a winding and walled canyon. When considered in relation to these other factors, mere speed may amount to wilful misconduct because such driving under the mentioned conditions could reasonably be said to be in wanton and reckless disregard of both the probable and possible results that would ensue.

■ It is true, as contended by respondents, that there was no animosity of feeling or acrimony of conversation or actions on the part of defendant driver and either of his guests, but wilful misconduct may exist without the presence of animus or ill-feeling. It may be motivated by what is referred to in *Rawlins* v. *Lory*, 44 Cal.App.2d 20, 24 [111 P.2d 973], as "skylarking" or indulging in antics or the cutting of capers with an automobile. Or it may be occasioned for the sake of the thrill which it produces and with reckless indifference to consequences.

■ Appellants further contend that the principal and

only cause of the accident was not due even to speed but rather was due to the act of the driver in momentarily turning his head to see what his passengers were doing, with the result that the car ran off the road, got into some soft dirt and became unmanageable. In that connection it may well be said that the jury could have concluded that there was no causal connection shown between the act of defendant driver in turning his head and the injury to plaintiff. The jury was entitled to assume and infer, as evidently they did, that had defendant driver been operating his automobile at a moderate rate of speed, commensurate with the circumstances which surrounded him, and of which he had knowledge, and with due regard for the duty he owed his guests, that the turning of his head would not have resulted in injury. Furthermore, the jury was not required to believe appellants' version as to why and how the accident occurred but they were authorized, under the facts here present, to conclude that the probability of injury to a guest from such conduct would immediately suggest itself to any person of ordinary prudence as the inevitable consequence of such driving and that, therefore, any driver engaging in such conduct as is set forth herein is charged with implied knowledge of not only the possibility but the probability of injury to his guests. We, therefore, conclude that the evidence in this case justified the finding by the jury that the defendant was guilty of wilful misconduct.

As a second ground for reversal of the judgment herein, appellants urge that the trial court refused to give the jury certain instructions tendered by them at the trial on the subject of wilful misconduct and defining the difference between gross negligence and wilful misconduct. It would unduly prolong this opinion to here set forth the proffered and refused instructions. Suffice it to say that they set forth recognized abstract principles of law governing wilful misconduct; defined ordinary and gross negligence; distinguished such forms of negligence from wilful misconduct; and set forth the line of demarkation between the two forms of negligence and what is known as wilful misconduct. By the refused instructions the jury would have been advised that a charge of wilful misconduct puts in issue the state of the defendant driver's mind; that the violation of a statutory duty does not of itself establish wilful misconduct; that ex-

cessive speed of and by itself, and unaccompanied by circumstances indicating an intent to injure another or a wanton disregard for the safety of a guest, is not sufficient to support a finding of wilful misconduct; that no issue of intoxication was involved in the case.

 Examination by us of the record herein leaves us with the belief that the court fully and fairly instructed the jury upon all of the issues raised by the pleadings and presented by the evidence. The jury was explicitly instructed that under the law of this state a guest in an automobile driven by another cannot recover damages for injuries sustained when such driver fails to exercise ordinary care; that in order to recover damages the guest must establish by a preponderance of the evidence that the injuries were occasioned by the driver's intoxication or by his wilful misconduct. The jury was advised that the plaintiff did not contend that her injuries were the result of any intoxication on the part, of the defendant driver. The court then correctly defined for the jury what is meant by the phrase "wilful misconduct"; that excessive, unreasonable or imprudent speed "does not in and of itself show that the driver was guilty of wilful misconduct"; that unless the speed under all the circumstances, was so excessive as to make it evident to a reasonably prudent person that danger of injury to the guest was a real probability, then such speed would not amount to wilful misconduct. The jury was also instructed that the mere fact that the defendant driver had consumed alcoholic beverages prior to the happening of the accident is not sufficient in and of itself to prove that the defendant is liable; that the intent which is a necessary element of wilful misconduct, as referred to in other instructions, is not a mere intent to commit an act, but the intent must go to the misconduct. While the court did not, in the language suggested by defendants, admonish the jury as to the difference between ordinary and gross negligence and wilful misconduct, it did clearly and understandingly define for the jury what constitutes wilful misconduct, which was the only issue before them. When it is remembered that instructions should not be considered singly, but in their entirety, we have no hesitancy in saying that the jury was clearly, understandingly and unerringly admonished, and must have understood, that before they could find defendant driver guilty of wilful misconduct they must

be convinced by a preponderance of the evidence either that the conduct of defendant driver amounted to the intentional doing of an act with knowledge on his part, and that as a consequence thereof, injury to his guests was a probable, as distinguished from a possible, result, or that he intentionally acted with a wanton and reckless disregard of the possible result of such act. From a reading of all the instructions given, we are impressed that the trial judge fully, fairly and correctly advised the jury as to the amount, quality and degree of proof necessary before defendant driver could be held guilty of wilful misconduct. The law requires no more than this.

Appellants next complain of an instruction given by the court wherein the jury was told that ''a driver is charged with knowledge of the probable consequences of his conduct, if such consequences would have been apparent to any person of ordinary prudence and intelligence.'' In another instruction the jury was advised that ''in order that an actor's conduct may be classed as reckless or wilful, it is not necessary that he himself should recognize it as being extremely dangerous. His inability to recognize the danger may be due to his own reckless temperament, or to the abnormally favorable results of previous conduct of the same sort.'' We fail to perceive wherein the challenged instructions constituted serious or any prejudicial error which militated against the substantial rights of the defendants. The latter apparently base their attack upon the quoted instructions on the ground that they measure the required standard of defendant driver's conduct on the basis of what would be apparent to the ordinary, careful and prudent driver. Appellants' claim in this regard cannot be sustained. For the same reason that the law prescribes a standard for measuring the conduct of people in determining whether they are guilty of ordinary negligence, there must be a standard to measure the conduct of a vehicle driver charged with wilful misconduct, to determine whether such conduct was of the character contemplated by section 503 of the Vehicle Code. Of necessity that standard must consist of a comparison of the conduct of the driver in question with that of the average man, or to use the phrase so familiar to us, ''the ordinary, careful and prudent man'' situated as the defendant driver was, seeing what he saw and knowing what he knew. Instead of misleading the jury as

to the character and quantum of evidence required to support a charge of wilful misconduct, the questioned instructions merely gave to the jury the universally applied standard from and by which they were to determine whether the actions and conduct of defendant driver amounted only to ordinary or gross negligence, or when viewed in the light of what, under the existent circumstances, ordinary prudence and care would dictate, amounted to such recklessness, wantonness, and wilfulness as to approach that wilful misconduct contemplated by the code section upon which this action was predicated. It is noteworthy that appellants do not venture to suggest any different standard by which to measure the conduct of defendant driver than that contained in the challenged instructions. Manifestly, it cannot be said that the conduct of defendant driver should be measured by the actions or behavior of a careless, an imprudent man, an intoxicated man, or one who is an incompetent vehicle driver.

For their next ground of appeal appellants contend that the court erred to their prejudice in permitting a police officer to testify to an experiment allegedly made by him and to express his opinion as to speed, based upon such an experiment. In that connection the record reveals the following: "Q. (By MR. SPAULDING, attorney for plaintiff) You made some experiments up there as to how fast a car could make that turn and leave tire-burns? A. I drove my police car around these curves, yes, sir. Q. And how fast did you go around these curves? MR. PARKER: I object to demonstration evidence as incompetent, irrelevant and immaterial. It does not tend to prove or disprove any of the issues in this case. The weight of the cars was not the same, the condition of the highway was not the same, dampness, and so forth. It is not proper evidence. THE COURT: I think with that evidence he may then proceed to testify as to the other matters involved. I think possibly the evidence along that line may tend to a little confusion, but having tried it, he is in a position, with what he has testified to, to testify to the ultimate, so he can tell us, from his skid-marks. *You can go into that matter of the brush-marks.* (Emphasis added.) By MR. SPAULDING (continuing): Q. *From the brush-marks you found there, and the evidence of the collision of the tree and the automobile,* which you saw, are you able to express an opinion as to the momentum, or speed of the car, at that turn? (Emphasis added.) MR. PARKER: If the Court please, I object to that

on the ground it is an invasion of the province of the jury. I submit, the weight of the cars, the condition of the tires, and so forth, would make a lot of difference. If the tires had gotten off the road and there was some mud on them they would skid further than if the car had been on the road all the time. The conditions are not identical. He did not make the test with our car under the same conditions. THE COURT: Overruled. By MR. SPAULDING (continuing): Q. Can you express such an opinion, Sergeant? A. Yes, sir. Q. What is your opinion as to the minimum speed at which that car was traveling? MR. PARKER: Same objection. THE COURT: Overruled. A. At least fifty miles an hour.''

It is at once apparent from the foregoing that the opinion of the officer was not finally asked for nor based on the result of the experiment he made with an automobile, but was founded upon the presence at the scene of the accident of certain physical facts, viz., the brush-marks and the tree with which defendant driver's vehicle collided. The objection, therefore, went more to the weight than to the admissibility of the questioned testimony.

The next contention made by appellants is that prejudicial error was committed by the trial court in permitting the plaintiff, over defendants' objections, to express her opinion or impression as to the speed at which the automobile in which she was riding traveled. In that regard it appears that after plaintiff had testified that she paid no attention to the speed of the automobile until just before the impact, when she became apprehensive and afraid, she was asked whether or not she had any opinion as to the speed of the automobile at the point where she heard her fellow passenger exclaim ''Slow down''; to which interrogatory she answered in the affirmative. Objection, made on the ground that no proper foundation was laid, being overruled, the witness testified ''I should say sixty-five (65) or seventy (70).'' She was then asked ''That was your impression at the time?'', to which she replied ''Yes, sir.'' While the testimony in question was probably entitled to little weight, nevertheless we cannot say that its admission for what it was worth constituted reversible error because the plaintiff had previously testified that just prior to the accident ''and the next thing I noticed, we were going very fast. I was afraid. . . .'' She also testified that she was aware of the fact that they were

going around various curves in the road, indicating that she was not entirely oblivious to the surroundings in and conditions under which she was traveling. ▮▮▮ Furthermore, the law recognizes a very broad and liberal rule in the reception of opinion evidence of non-experts as to the rate of speed at which streetcars or motor vehicles are traveling. (*Johnsen* v. *Oakland etc. Ry.*, 127 Cal. 608, 611 [60 P. 170]; cited with approval in *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, 486 [66 P. 734].) There is little conflict as to the rule applicable to automobiles, and in fact all moving objects, that a person of ordinary intelligence, having opportunity for observation, is competent to testify as to the speed at which an automobile is being operated at a given time (*Shimoda* v. *Bundy*, 24 Cal.App. 675, 678 [142 P. 109]).

▮▮▮ Again it is contended that the court committed prejudicial error in permitting the plaintiff to show that none of the defendants visited her after the accident. While the minor plaintiff was testifying, she was asked the question "Now, Miss Hastings, you say you had never seen this Serleto boy before. Have you ever seen him since, until today?" An objection was interposed by defendants on the ground that the interrogatory did not tend to prove or disprove any of the issues in the case, and was sustained by the court. Plaintiff's counsel thereupon urged that the testimony was admissible as tending to show the attitude of defendant driver at the time of the accident. After some discussion, the court stated "I will receive it with the right on the part of defendants to move to strike later if he chooses." Thereupon the minor plaintiff was permitted to answer that she had not seen the defendant driver since the accident except upon one occasion when she observed him drive by her place of residence on a motorcycle. This was followed by the question "Have you ever seen his parents since?" Timely objection on the part of defendants was overruled and the witness answered "No, I have never seen his parents until today." Although the trial judge admitted the testimony subject to a motion to strike, no such motion was at any time made by defendants.

The rulings complained of were erroneous. We are unable to perceive or understand wherein or how this evidence could have any proper bearing upon the legal rights of the parties involved. ▮▮▮ Undoubtedly, it is proper to interrogate one

accused of wilful misconduct relative to his mental attitude and knowledge of the probable consequences of his act, but such inquiry must be confined to his state of mind prior to or contemporaneously with the accident and not subsequent thereto (*Rhoads* v. *Studley,* 15 Cal.App.2d 726, 729 [59 P.2d 1082]). Manifestly, under no theory whatever was the inquiry proper or warranted as to the parents of the minor defendant. Their condition of mind was not an issue in the case. The testimony elicited could serve no purpose except possibly to arouse the prejudice and excite the passions of the jury. There are some good and sufficient reasons why the failure of a defendant to visit an injured plaintiff is not indicative of a lack of sympathetic impulses. For instance, the terms of one's public liability insurance policy may prohibit such visitations by the insured; and again, there are instances where a sympathetic driver has visited the home of an injured person following an accident, inquiring into the nature and extent of such injuries, only to be confronted at the subsequent trial of a damage suit with the statement that on the occasion of such humanitarian visit the defendant expressed his sympathy and regret and furthermore stated that the accident was all his fault. In such a situation the defendant driver is obliged to admit that he did visit the injured party, and it then becomes a question as to whose version of the conversation the jury is going to believe. We think the questioned testimony was immaterial, irrelevant and was improperly admitted.

 The next assignment of error involves a ruling of the trial court by which the defendants were denied the right to show that the third occupant of the automobile, Wilkie Richardson, who uttered a warning to the driver a moment prior to the accident, had not previously made any protest or offered any criticism of the manner in which the vehicle was being driven. Wilkie Richardson was not called by either side as a witness at the trial. The record indicates that while the minor plaintiff was testifying as a witness she was asked on cross-examination "Did Wilkie make any complaint? You said you didn't, but now I am inquiring about Wilkie." An objection to the question was sustained. Thereupon, defendants offered to prove that Richardson "made no protest and did not criticize in any manner the driving of the automobile the evening of the accident at any time prior to the

accident, preceding the incident when he made an exclamation, 'Slow down,' or 'Look out. Don't you see that tree?' Prior to that time we offer to prove there was no protest or criticism made by witness.''

Appellants contend that Richardson's failure to protest against the manner in which the minor defendant was driving until the former uttered a warning just prior to the accident, would tend to show that the automobile had been driven in a safe and prudent manner up to a moment before the crash; and that if the passengers thought the vehicle was being driven in a careful manner then the driver of the automobile, who was likewise of the same frame of mind, could not be charged with wilful misconduct. The claim is without merit. Plaintiff had testified that she made no protest during the ride and certainly Richardson's failure to make audible protest was not indicative of nor would it tend to prove what he ''thought'' of the manner in which the vehicle was being driven.

Finally, appellants urge that respondent's counsel was guilty of prejudicial misconduct in asking the minor defendant driver if he had had previous accidents and in eliciting from him testimony that he did have another accident subsequent to the one involved in this litigation. In that respect the record shows: ''Q. You have had accidents before, up that Canyon, haven't you? A. No. Q. You have had no accidents before? A. No, not one. MR. PARKER: If the Court please, I object to that as irrelevant and immaterial. THE COURT: Well, he just asked if he has had accidents. Overruled. Q. You have had some since, haven't you? A. I have had one since that. Q. You ran into an automobile on the road some where? MR. PARKER: Objected to as irrelevant and immaterial. THE COURT: Sustained.''

It is noteworthy that when the question was asked as to previous accidents no objection was made thereto by defendants' counsel until after the answer was given, and no motion was offered to strike the answer given. Then when the question was asked as to accidents subsequent to the one here involved, no objection whatever was made. But when plaintiff's counsel asked ''You ran into an automobile on the road somewhere?'', an objection by defendants' counsel was promptly sustained by the court. Appellants now contend that plaintiff's counsel deliberately injected a false issue into

the case for the sole purpose of prejudicing defendant driver before the jury. However, at the trial, appellants' counsel apparently did not regard the question as sufficiently prejudicial to warrant him in asking the court to admonish the jury or to attempt by appropriate instruction to cure any prejudicial effect of the interrogatories and answers thereto. From a reading of the cold record it would appear that when the defendant driver denied being involved in any previous accidents, his counsel speculated on a similar answer being given to the second interrogatory concerning involvement in accidents subsequent to the one herein; and only when the answer proved disappointing did he object and the court promptly sustained his objection. Counsel may not speculate upon a favorable answer being given and then be heard to complain. Furthermore, it is manifest that the challenged questions are not such that any prejudicial effect resulting therefrom could not have been cured by appropriate admonition to the jury. No request for such curative instructions having been made in the trial court, the claimed resultant prejudice cannot be raised for the first time on appeal.

With the record in the condition in which we find it, we must, in connection with the disposition of this appeal, look into the effect of the error of the trial court in admitting the evidence that none of the defendants visited the minor plaintiff after the accident, in the light of the provisions of section 4½ of article VI of our state Constitution, which forbids us to set aside any judgment or grant a new trial unless, after an examination of the entire cause, including the evidence, this court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The phrase "miscarriage of justice," used as descriptive of that condition of a cause, has no hard and fast definition. We are persuaded that where the record discloses the commission of errors at the trial the appellate court must first find that upon the record it is seriously doubtful that without such errors the judgment appealed from would have been rendered, before a reversal of such judgment is justified. Our duty under the constitutional provision is thus epitomized in *People* v. *Black,* 73 Cal.App. 13, 38 [238 P. 374], "It is the law that, when applying the provisions of section 4½ of article VI of the Constitution to an entire cause, we must direct a reversal when we are unable to say 'whether appellant would or

would not have been convicted but for the errors of the court.' (*People* v. *Degnen,* 70 Cal.App. 567 [234 P. 129]).'' In the case with which we are here concerned the evidence of defendant driver's guilt of wilful misconduct was, under all the circumstances, overwhelming and conclusive. In the light of such a record we cannot say that the error complained of was so flagrant that it might have been directly responsible for the verdict against the defendant. In this connection it must be remembered also that the challenged evidence was admitted subject to a motion to strike and the defendants' counsel chose not to make such a motion. To us the conclusion seems justified that had counsel felt at the trial that the cause of his clients was seriously jeopardized or even prejudiced by the admission of such testimony he would have availed himself of the opportunity offered him to move that it be stricken. Furthermore, no claim is made that the damages awarded were excessive or exceeded the bounds of fair and just compensation for the injuries received. Indeed, no such contention could justifiably be made for the evidence discloses that the minor plaintiff's expense for hospitalization alone was in excess of $1,000; that the doctor's bills had not yet been submitted and that at the time of trial respondent was still on crutches and under the tutelage of instructors from a school for crippled children. The verdict rendered does not, therefore, admit of the stricture that it was prompted by bias, passion, sympathy or prejudice.

For the foregoing reasons the judgment is affirmed.

York, P. J., and Doran, J., concurred.