[Civ. No. 14140.   First Dist., Div. One.   Sept. 13, 1949.]

JACOB GOLDMAN et al., Respondents, v. JOHN LEE HOUSE et al., Appellants.

Charles H. Blagburn and James Sykes for Appellants.

Leon A. Blum for Respondents.

WARD, J.—This is an appeal from a judgment against defendants John Lee House and Marie House, husband and wife, in a personal injury action based upon wilful misconduct. The complaint alleges that plaintiffs were in possession, on a month-to-month tenancy, of a certain upper flat in San Francisco and had been tenants thereof for many years prior to an accident which occurred in February, 1947. Mildred Goldman, wife of coplaintiff Jacob Goldman, fell down a stairway and sustained certain injuries, and it is claimed that the injuries resulted from defendants' action in turning off the electric current, which left the flat and stairway in "complete darkness."

The complaint alleges "That on or about July 12, 1946, the defendants purchased and acquired the premises within which the said upper flat is contained, and immediately thereafter the said defendants commenced to harass and annoy the plaintiffs for the purpose of coercing plaintiffs to vacate said upper flat and remove therefrom, and among other things the said defendants wilfully and maliciously shut off the water supply and the electric current from said upper flat for various periods of time, without notice to plaintiffs and without cause; . . ."

The issue of shutting off the water supply is pertinent only as tending to prove a plan of harassment and annoyance instituted by defendants against plaintiffs. The primary

issue was settled by agreement of the respective litigants during the trial, namely, that the dispute was whether defendants wilfully and maliciously shut off the electric current and for that reason Mildred Goldman fell down the darkened stairway and sustained injuries.

The evidence shows that the building consisted of a basement apartment, the first floor apartment in which the defendants, Mr. and Mrs. House, had lived since their purchase of the building in July of 1946, and two apartments above, in the top one of which the Goldmans had resided for several years. A separate enclosed stairway led to each of the upper apartments. The stairway to the Goldman flat had approximately 30 steps with two landings. There was a door with a clear glass pane at the first floor entrance of the stairway and a frosted glass window at the top landing. There was an overhead light fixture at the lower landing inside the door, which was operated by push button switches located at both the bottom and the top of the stairway. Gaslight fixtures were located at various places in the flat, though there was conflicting testimony as to whether there were any on the stairway. On the evening of February 17, 1947, there were no electric lights in the flat. Mrs. Goldman had cooked supper on the gas stove and was burning candles for illumination, which she had been obliged to do for some months during various intervals. On returning home that evening Mr. Goldman found the keyhole in the entrance door at the bottom of the stairway stuffed with broom straw. He knocked on the door and "hollered" and Mrs. Goldman started down the unlighted stairs to let him in. She fell and injured her right arm and side. She testified that she wore low-heeled shoes and that before starting to descend she tried the light switch unsuccessfully, so held onto the stair rail. At the time of the trial Mrs. Goldman was 75 years of age and her husband "past 75."

Though the evidence is confusing and much of it contradictory, the trial court was justified in finding that the plaintiffs were month-to-month tenants, and that ever since the defendants had purchased the building in July of 1946 they had endeavored by harassment and annoyance to evict the plantiffs. Tendered rent was refused, water was shut off at various times, and the keyhole of the entrance door was stuffed with straw; also an eviction notice was sent to plaintiffs by the O. P. A. which was later rescinded, and a suit was instituted by defendants for nonpayment of rent

but subsequently dismissed. There was evidence that the electricity was off at various times, leaving the flat in complete darkness.

■ The damage in this case resulted from a condition of darkness. That allegation is the basis of the action. The fact that the complaint alleged, no demurrer thereto being interposed, and the court found that acts other than shutting off the electric current had occurred tending to harass and annoy plaintiffs was merely a recognition that other acts of harassment were performed which might be considered as probative of the ultimate fact found by the court that "while said upper flat was in complete darkness by reason of the fact that the electric current thereto had been shut off by said defendants as aforesaid, Mildred Goldman, one of the plaintiffs, attempted to walk down the stairway of said upper flat and, because of the complete darkness, fell down the said stairway and sustained serious and painful injuries thereby; . . ." Other findings of fact contain evidence not inconsistent with the main fact in issue. The testimony of each plaintiff may have indicated senility, as defendants contend, but the credibility of each witness was a question for determination by the trial judge. The judgment was not based on the acts of shutting off the water or placing straw in the keyhole, and there is no indication that the court was confused in the admission of evidence or in the preparation of the findings. The ultimate facts found are sufficient to support the judgment. (24 Cal.Jur. §§ 203, 204, p. 968 et seq.)

■ On appeal defendants argue that Mrs. Goldman should have used a lighted candle. This contention savors of the claim that Mrs. Goldman was guilty of contributory negligence. Cases cited by defendants in support of plaintiffs' contributory negligence are not in point and need not be considered, since the present action is based on wilful misconduct. Where a person is charged with negligence, the contributory negligence of the injured party may be a good defense to the negligence allegations but is not a defense to a wilful misconduct charge. Wilful misconduct partakes more of the nature and character of intentional and malicious mischief than of negligence. "Ordinarily, and likewise in the law, there is a decided and well-defined distinction between mere 'negligence' and 'willfulness.' Negligence is opposed to diligence, and signifies the absence of care. It is negative in its nature, implying a failure of duty, and excluding the idea

of intentional wrong, and it follows that the moment a person wills to do an injury he ceases to be negligent. [Citing cases]'' (*Tognazzini* v. *Freeman,* 18 Cal.App. 468, pp. 473-474 [123 P. 540].) ▄ That misconduct is wilful may be implied if a reasonable inference may be drawn that the conduct of the party was such that he probably knew that injury would result. (*Hastings* v. *Serleto,* 61 Cal.App.2d 672 [143 P.2d 956] ; 68 C.J. p. 282, n. 82.) ▄ It is immaterial that the wrongdoer did not intend the particular consequence that occurred. The misconduct may still be the proximate cause of the injury. (52 Am.Jur. 382.) ▄ An agreement to let upon hire is an agreement that the hirer may have quiet possession of the thing hired. (Civ. Code, § 1927; *McDowell* v. *Hyman,* 117 Cal. 67 [48 P. 984].) ▄ An attempt to evict by the use of wrongful and malicious means with knowledge of probable injury is actionable. ▄ Negligence is no defense to an intentional tort. (Prosser, Torts, 402; approved in *Seeger* v. *Odell,* 18 Cal.2d 409, p. 414 [115 P.2d 977, 136 A.L.R. 1291].)

Defendants contend that there was no duty to maintain lights on the stairway. Health and Safety Code, section 17820 contains certain provisions relative to the maintenance of artificial light to illumine a ''public stairway.'' The stairway referred to in this case is not a public stairway. Though it does not appear that electricity was contracted for in the lease, it was agreed by the respective parties that ''if those switches had been pulled the defendant is liable, if they prove that he did it.''

▄ During the oral argument on appeal the court suggested that Mrs. House, as one of the owners who did not turn off the lights or participate in any of the other acts indicating a malicious and wilful intent, may not be liable for the husband's acts. Plaintiffs failed to comment on this problem. Mrs. House could hardly be declared the principal in this proceeding and Mr. House merely her agent. There is not enough evidence of ratification or acceptance of benefits. In fact, there is no evidence that Mrs. House is connected with the acts of her husband except as one of the owners of the flat. In *Citizens State Bank* v. *Hoffman,* 44 Cal.App. 2d 854 [113 P.2d 211], an action for malicious prosecution, a wife was joined with her husband as a defendant. The court stated, at page 855: ''Apparently the only connection she had with the litigation which brought about the present action lies in the fact that she is the wife of the other appellant and is one of the owners of the property for the rental of which the

criticized action was commenced. Clearly no sufficient showing has been made to justify a judgment against her in the present action.'' (12 A.L.R., p. 1463, subds. III and IV.)

There is evidence that the electric current was in operation subsequent to the action. Mr. Goldman testified that on one occasion he saw Mr. House cut the wires connected with the fuse and at another time pull the ''switch.'' There is some confusion relative to the exact dates that Mr. House performed these particular acts but the question of the weight of the evidence is in the hands of the trial court. Certain inferences from other occurrences considered with the incidents of putting the flat in darkness were matters for the trial judge to determine.

The judgment insofar as it applies to Marie House is reversed. The judgment against John Lee House is affirmed; the costs of appeal to be borne by defendant John Lee House.

Peters, P. J., and Bray, J., concurred.