[L. A. No. 22312.   In Bank.   July 7, 1953.]

NAN VICTORIA TRUE CONNOR, Respondent, v. PAUL J. GROSSO et al., Appellants.

W. P. Smith and Henry F. Walker for Appellants.

Stanton, Stanton & Welbourn for Respondent.

TRAYNOR, J.—This action was consolidated for trial with *Herzog* v. *Grosso, ante,* p. 219 [259 P.2d 429]. The trial court found that defendants Paul Grosso and Madolyn Grosso deposited 3,184 cubic yards of material on plaintiff Nan Connor's property and entered judgment against both defendants for $4,362.08.

Defendant Madolyn Grosso contends that the award of damages against her is not supported by the evidence.* We agree. ■ The fact that Paul Grosso was her husband and that he held the property with her as a joint tenant does not establish her liability. (*Goldman* v. *House,* 93 Cal.App. 2d 572, 576 [209 P.2d 639]; *Citizens State Bank* v. *Hoffman,* 44 Cal.App.2d 854, 855 [113 P.2d 211].) In *Brown* v. *Oxtoby,* 45 Cal.App.2d 702, 709 [114 P.2d 622], and similar cases relied upon by plaintiff, there was evidence that the wife actively participated in the tort, or that the husband acted as her agent, or that she ratified his conduct. Plaintiff pleaded a cause of action against Madolyn Grosso, but no evidence was introduced to support her allegations, although the case was vigorously contested and on trial for seven days. The trial court will therefore be directed to enter judgment for Madolyn Grosso. (Code Civ. Proc., § 53;. see *Burtis* v. *Universal Pictures Co., Inc.,* 40 Cal.2d 823, 835 [256 P.2d 933].)

■ The trial court found that defendants "dumped upon

---

*In the companion case of *Herzog* v. *Grosso, ante,* p. 219 [259 P.2d 429], the award of damages was against Paul Grosso only.

said real property of plaintiff 3,184 cubic yards of dirt, rocks and other debris'' and that the ''cost of removal of said material so unlawfully dumped upon said real property of plaintiff, including slippage necessarily incidental to such removal, is the sum of $4,362.08.'' Defendants' contention that this finding is not supported by substantial evidence is sustained by the record. Before defendants acquired their property, a considerable amount of dirt had already been dumped on the Connor property by Herzog and Mrs. Schneider in the course of building the road on parcel 3, filling in the ground near the telephone pole, and leveling land between the road on parcels 2 and 3 and the road to the top of the hill. Defendants acquired the hilltop property in March, 1949. Defendant Paul Grosso dumped dirt on the Connor property in November, 1949, when he regraded his road, and again in September, 1950, when he built the ramp across the fill.

One witness, Bert Willis, testified that to restore the Connor property to its natural condition by removing all of the fill and the dirt that would fall in upon removal thereof, would require excavation of 3,184 cubic yards of dirt at a cost of $4,362.08.* Another witness, Kenneth Cook, testified that the last fill, in September, 1950, amounted to 1,570½ yards. According to Willis, removal of 1,570½ yards would cost $2,625.84. Witnesses called by defendants testified that Grosso dumped only 150 yards of dirt on the Connor property but the trier of fact could, of course, resolve the conflict in the evidence in favor of plaintiff. Neither party introduced evidence showing the depreciation in value of plaintiff's property caused by the dumping of the dirt.

Defendant, of course, should be required to pay the cost of removing any slippage that may reasonably occur in the course of removing the material that he dumped on plain-

---

*Willis testified that he based his computation on the amount of filled ground lying between the red line and the dotted line on plaintiff's exhibit C-2. That exhibit is a survey map prepared by witness Cook. He testified that the red line represented the boundary between the Connor property and parcels 2 and 3, and that the dotted line indicated the bottom of the fill on the Connor property. Cook stated that he dug four test holes in the fill and concluded that only part of the dirt in the fill could be attributed to the last dumping on the Connor land.

The trial court asked Willis, ''I take it from your testimony so far, Mr. Willis, that what you are conveying is that it would require the removal of 3,184 yards to restore the Connor property to its *original ground level*.'' (Emphasis added.) The witness replied, ''That is right, sir.''

tiff's property. The evidence, viewed most favorably to plaintiff, shows that Grosso actually dumped 1,570½ cubic yards of material on plaintiff's property and that to remove all the fill, including material dumped by other persons, plus the dirt that would slide down the hill from parcels 2 and 3 during such removal, it would be necessary to excavate 3,184 cubic yards. There is no evidence that the material previously dumped by other persons, lying under the dirt subsequently dumped by Grosso, would have to be removed in order to remove the dirt dumped by him. Nor is there any evidence to show the amount of dirt that will slide down the hill if only the 1,570½ yards dumped by Grosso were removed.

█ Since Grosso did not act in concert with the other persons dumping dirt on the Connor land, he cannot be required to pay for removal of the dirt dumped by them. (*Slater* v. *Pacific American Oil Co.*, 212 Cal. 648, 654 [300 P. 31]; Prosser, Torts, p. 333.) █ The judgment holds Grosso responsible for all the dirt fill on the Connor property and is thus without adequate support in the evidence.

█ Defendant argues that the error in the award of damages requires a complete new trial. After a lengthy trial, the trial court resolved the question of liability in favor of plaintiff and the question of exemplary damages in favor of defendants. The only issue on which the judgment is not supported by the evidence is the amount of compensatory damages, and we are of the opinion that a separate trial on that issue will expedite the administration of justice and will not deny defendant Paul Grosso a fair trial, for he has already had a fair trial on the issue of liability, and the trial court's findings on that issue are amply supported by the evidence.

The judgment against defendant Madolyn A. Grosso is reversed, and the trial court is directed to enter judgment in her favor. The judgment against defendant Paul A. Grosso is reversed, and the trial court is directed to retry the issue of compensatory damages only. Madolyn Grosso shall recover her costs on appeal. The other parties shall bear their own costs. .

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. I take particular exception to the order directing the trial court to enter judgment in favor of Madolyn Grosso. Even if we can properly conclude that the evidence on this record is insufficient to support the

judgment against her we have no right to assume that on a new trial no additional evidence against her could be produced.

It further appears to me to be inaccurate to state in the opinion that "The only issue on which the judgment is not supported by the evidence is the amount of compensatory damages . . ." and at the same time to order a new trial on the issue of the amount of compensatory damages as against Paul Grosso while directing a judgment in favor of Madolyn.

In my view, on the state of the record, and on the facts and law stated in the majority opinion, there should be a complete new trial on all issues as to all parties.

CARTER, J.—I dissent.

I think it is clear that the evidence is sufficient to support the award of damages and a new trial on that issue should not be ordered.

The majority opinion proceeds upon the theory that plaintiff was not entitled to the cost of removing more dirt than was actually dumped on her property even though it would require the removal of the additional amount to effectively remove the amount dumped and that there is no evidence that the removal of the additional amount was necessary to effectively remove the amount dumped.

The first proposition is manifestly untenable. It is the same as saying in a case where plaintiff was entitled to damages for an injury to the motor of his car that he could recover for the damage to the motor but not the expense of repairing it where part of the cost of repair was the removal and replacement of other parts although necessary to repair the motor. The evidence clearly supports the necessity of removing the additional soil.

The majority holds that there was insufficient evidence to support the trial court's finding that defendant Grosso dumped 3,184 yards of soil on plaintiff's property and hence damaged her in the sum of $4,367.08, being arrived at by computing the cost of removal of the dirt at $1.37 per yard. There is enough evidence, on the theory that while the total yardage of soil *dumped* on plaintiff's land may have been 1,570½ instead of 3,184, it would require the removal of the latter amount because to remove effectively the 1,570 yards, an additional amount, up to the 3,184 yards, must be removed because of the sliding of other soil onto plaintiff's land as the result of removing the 1,570 yards.

While Cook testified that 1,570 yards had been *dumped* on plaintiff's land, plaintiff's expert (Willis) on removal of the soil and the cost thereof, testified:

"Q. Now, at my request, Mr. Willis, did you make an estimate of the amount of filled ground represented on this map that I have referred to, Plaintiffs' Exhibit C-2, that lies between the Connor property line or the red line and the mark with the dotted line entitled 'Toe of spill from road'?"

"THE COURT: What end?

"MR. STANTON: Well, all the ground enclosed within that curved line and the red line.

"A. Yes, I did, but in *addition to that* I went back to the *natural contour of the land. You couldn't excavate it to your property line without sliding back of your property line,* so we went back of the property line to the *original contours* of the hill.

"Q. Why did you do that, Mr. Willis? A. To excavate at a vertical line at the property line, you *couldn't hold the material above it, you would slide down into the property.*

"Q. In other words, in making your estimate of yardage, you had in mind the removal of that dirt. Is that correct? A. That is right.

"Q. Then if you removed right along the property line, it is your best estimate that the other dirt would fall into place and that would have to be removed as well? A. That is right.

"Q. Now, you were asked to estimate the amount of cubic yards of dirt necessary to remove along that property line, were you not? A. That is right.

"Q. What was your estimate of the total number of cubic yards of earth? A. 3184 cubic yards.

"Q. That includes not only the amount of earth in the fill itself, but also the yardage of earth which you estimate would fall into the fill, were the present fill in the Connor property removed? A. Yes." (Emphasis added.)

"THE COURT: I take it from your testimony so far, Mr. Willis, that what you are conveying is that it would require the removal of 3184 yards to restore the Connor property to its original ground level."

That testimony is at least reasonably susceptible of the construction that in order to remove the soil dumped on the land by Grosso it would be necessary to remove the soil to the original contour of the land because otherwise if you removed only the part dumped, other soil would slide down

leaving soil on the property the same as before; that to remove all of the soil necessary to restore plaintiff's land, 3,184 yards must be removed. This is in accord with the finding of the trial court.

This being the state of the record, there is ample evidence to support the finding of the trial court as to the amount of damages suffered by plaintiff and the judgment should, therefore, be affirmed.