[No. 19296.    Department Two.—September 10, 1894.]

## C. F. BEAN, RESPONDENT, v. MARY O. H. STONEMAN ET AL., APPELLANTS.

WATER RIGHTS—CONSTRUCTION OF CONTRACT—LOSS FROM SEEPAGE.—
Under a grant of an amount of water equal to two-fortieths of all the waters rising upon the lands of the grantor, so far as such waters can be brought to the northern line of the lands of the grantee, by the ditch or flume of the grantor, with an option to the grantee to take the same quantity and proportion of water from a reservoir to be constructed in front of the house of the grantor, and to convey the same by pipe to the lands of the grantee—the loss from seepage in conveying the proportion of the water granted by means of the ditch must be borne by the grantee.

ID.—PLACE OF DELIVERY—GRANT OF EASEMENT.—No means or mode of measurement of the proportion of the water to be delivered to the grantee having been provided at the northern line of the land of the grantee, and the place of actual delivery and measurement having been at the reservoir constructed by the grantor, in the absence of an express agreement or manifest intention to the contrary, the reservoir must be held to be the place of delivery, with the grant of an easement for its conveyance to the land of the grantee through which the grantor covenanted that he would suffer the water to flow over his intervening land.

ID.—DUTY OF OWNER OF EASEMENT—OBLIGATION TO REPAIR WATER DITCH.—The grantee or owner of an easement is bound to keep it in repair, and this applies as well to water ditches as to private ways.

ID.—USE OF DITCH OF GRANTOR—CONTINUANCE OF USE—REPAIRS.—
Where the grant of the water right grants the use of a ditch of the grantor, and an option to the grantee to obtain the water by a pipe laid at the grantee's expense, the grantor can do no voluntary act to destroy or impair the easement in the use of the ditch; but in the absence of an express covenant that the grantor will continue the use of the ditch, or keep the ditch in repair, the grantor is not bound to repair it or keep it in a condition for continued use.

ID.—FREQUENCY OF DELIVERY.—Where the contract requires the water to be delivered at least once in ten days it should be discharged in such volume that the ditch being in good condition will give the grantee a reasonable use of the water.

ID.—AMOUNT OF DELIVERY—LOSS OF WATER FROM CONDITION OF DITCH.
The grantee is not entitled to have the water delivered in such volume as a larger ditch would carry, nor such as might be used by a large force of men distributing it, nor yet requiring a larger flow to compensate for the loss of water by reason of the ditch not being in proper condition; nor is he entitled to recover for a failure to obtain sufficient water for irrigation which was fairly attributable to the bad condition of the ditch.

CIV. CAL.—4

ID.—PLEADING—AMENDMENT AT TRIAL TO CONFORM TO PROOF—DISCRETION.—An amendment of the complaint at the trial to conform to the proofs is in the discretion of the court, and is allowable when the defendant is not thereby prejudiced.

ID.—ACTION FOR DAMAGES—BREACH OF CONTRACT—ELECTION OF COUNTS—EVIDENCE.—In an action for damages for alleged breach of a contract to deliver water for irrigation, the plaintiff is not required to elect between counts for damages for deprivation of water under the contract and for money expended in procuring water from another source; and evidence is admissible under both counts.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The main facts are stated in the opinion. The complaint was amended at the trial to conform to the proofs against the objection of the defendant. Paragraph 6 of the complaint alluded to in the opinion contained a count for damages for failure to deliver the water alleged to have been contracted for, while the next paragraph contained a count for money expended in procuring water from another source. Defendant, at the commencement of the trial, moved the court to compel plaintiffs to elect between these counts, and objected to any evidence under paragraph 6 of the complaint. The motion was denied, and the objections to evidence under both counts was overruled.

*A. Brunson*, for Appellants.

*Sheldon Borden*, and *Anderson & Anderson*, for Respondent.

HAYNES, C.—This is an action to recover damages for a failure to furnish water for irrigation, whereby it is alleged the orange and other trees, corn, and vegetables of the plaintiff were injured or destroyed. A jury trial was had, and resulted in a verdict for plaintiff for the sum of four thousand five hundred and eighty dollars. Defendants moved for a new trial, which was denied, and this appeal is from the judgment and the order denying a new trial.

In 1873 the defendant, George Stoneman, was the owner of a ranch then and now known as the "Stoneman ranch," upon a portion of which were springs and water sources, the waters from which were collected in a reservoir constructed upon the ranch, and from which the water or a portion of it was conducted through a ditch for the purposes of irrigation. In March of that year he sold and conveyed to Barrows and Furrey eighteen acres of land, part of said Stoneman tract, together with a certain portion of the waters arising upon the unsold part of the ranch. The covenant contained in the deed relating to the water right is as follows:

"And the party of the first part, for the consideration aforesaid, hereby conveys, bargains, and grants, and agrees to deliver and suffer to flow to the parties of the second part, their heirs and assigns of said above-conveyed lands, an amount of water equal to two-fortieths ($\frac{2}{40}$) of all the waters rising upon the lands of the party of the first part, so far as such waters can be brought to the northern line of the above-conveyed lands by the present ditch, or by such further ditch or flume as the party of the first part may hereafter construct, said amount of water to be delivered so that the parties of the second part, their heirs and assigns, shall, if by them required, have water for irrigation, as often at least as once in every ten days. *Provided*, That, in lieu and stead of receiving such amount and proportion of water by the ditch or flume of the party of the first part, the right is hereby granted to the parties of the second part, at their option, to take such quantity and proportion of water from the reservoir about to be constructed by said Stoneman in front of his house, and to conduct the same thence on to the above-conveyed lands by an underground pipe through the intervening lands of the party of the first part, at the expense of the parties of the second part, and in a careful manner, and without injury to trees, vines, and other improvements on said intervening lands, and for the purpose of the

laying of said pipe the right of way and entry is hereby granted."

At the date of this conveyance the parcel sold was not improved, but the ditch above mentioned was constructed to the land sold, and was used for irrigating other lands of the grantor; the length of the ditch or distance from the reservoir to the parcel sold being about one mile and a quarter.

The plaintiff became the owner of the eighteen acres so conveyed to Barrows and Furrey in June, 1887, together with said water right. Prior to 1891 the water was discharged from the reservoir into the ditch through a square wooden box, or flume, which passed through the embankment, or dam, near the bottom of the reservoir, and which was closed by a gate, the dimensions of the box being about fourteen by sixteen inches. In the winter of 1890–91 a portion of the dam was washed out, when the box was found to be decayed, and was replaced with an eight-inch steel pipe. From 1873 to 1891, whenever the lot now owned by plaintiff required irrigation, the water was turned into the ditch in what is termed an "augmented head"—that is, the two-fortieths to which the lot was entitled did not flow into the ditch continuously, but was permitted to accumulate until needed, when it would be discharged in a volume approximating the capacity of the ditch. The evidence shows quite clearly that if the water to which plaintiff is entitled were permitted to flow continuously into the ditch it would be absorbed by the ditch, and no part of it would reach plaintiff's land.

Prior to 1890 Mrs. Stoneman, who succeeded to the unsold portions of the ranch, as well as her husband before the conveyance to her, irrigated a vineyard upon the ranch, containing from one hundred and twenty to one hundred and forty acres, through the same ditch; but in 1890 the vineyard was destroyed by a disease which attacked the vines, and after that the defendants used no water through that ditch, their orange orchard

and ornamental grounds being irrigated through another channel from the same reservoir.

Mr. Graves owns a place in the vicinity of plaintiff's lot, and he also obtained water for irrigation from defendant's reservoir, but his water was conveyed through an iron pipe. In 1884 Mr. Hall, who then owned the lot now owned by plaintiff, and a Mr. Anderson, who owned land in that vicinity, were permitted to tap Mr. Graves' pipe, and obtain water for irrigation through it. Mr. Hall used that source entirely until he sold to plaintiff, and the plaintiff thereafter used it almost exclusively until 1890, when the license was revoked.

From these causes, together with the destruction of defendants' vineyard, the ditch was little used in 1890, and it was not attempted to be used in 1891, until on or about the 4th of June, when the plaintiff undertook to obtain water through it to irrigate his land. Shortly before this attempt he applied to Mrs. Stoneman to clean out and repair the ditch, which she declined to do, and the plaintiff thereupon did that work. Upon turning the water into the ditch the first day, the water flowed down the ditch about half way to plaintiff's land. At the next effort a little water reached the plaintiff towards night, and another attempt brought the water a little earlier, but not in sufficient quantity to do much good, the greater part of it being taken up by the ditch. The failure to obtain sufficient water is attributed by plaintiff to the insufficient size of the pipe by which the water is discharged from the reservoir into the ditch, and to a perforated hood placed over the upper end of it, and a hydrant through which it is discharged at the lower end. The quantity of water rising upon the ranch and flowing into the reservoir was found by measurement to be thirty-eight miner's inches.

The principal question in the case involves the construction of the covenant in the deed from Stoneman to Barrows and Furrey, hereinbefore quoted, and is directly presented by the following instruction given to

the jury: " By the deed of George Stoneman to Bar-
rows and Furrey, said Stoneman agreed to deliver the
water at the northern line of the eighteen-acre tract as
far as said water could be brought to that point by
means of the ditch then extending to said land. By
this agreement it is incumbent on said Stoneman and
his successors to keep said ditch in reasonably good
repair."

We think the court erred in this instruction as to the
place where the water is to be delivered and as to the
obligation to keep the ditch in repair; though it is con-
ceded that the same duty and liability which rested
upon George Stoneman now rests upon Mrs. Stoneman,
who has succeeded to his estate by a subsequent grant,
and that appellants' contention that the covenant was
personal and did not run with the land and become
obligatory upon Mrs. Stoneman cannot be sustained.

The quantity of water granted by the deed is two-
fortieths of all the water rising upon the ranch and no
more.   The water so granted was intended to be taken
and, except as to the water procured through the pipe
of Mr. Graves, had been taken, through the ditch above
mentioned.

The two-fortieths of the thirty-eight inches rising
above the reservoir is a fraction less than two inches;
and as a loss is necessarily sustained in conveying
water through an open ditch, if defendant is required
to deliver that quantity at the north line of plaintiff's
land, it is evident that a greater proportion than two-
fortieths must be used.   What such excess must be
depends upon the character of the soil or earth in
which the ditch is constructed, the care taken in its
preservation, and the frequency or constancy of its use.
The testimony of Mr. Purcell was to the effect that in a
ditch kept in the best condition the loss was equal to
about twenty-five per cent; whilst the effort of plaintiff
to procure water through this ditch in June, 1891,
showed almost an entire loss.   In this connection it
may be noticed that the grant instead of designating

the quantity of water in inches, specifies the proportion of the water rising on the ranch, and thus strongly suggests, if it does not positively show, that the water was apportioned to the entire ranch, each parcel as sold taking only its proportion; and if so the loss in conveying the water to the different portions must be borne by such portions, else the loss must be borne by the defendants, leaving a part of the land remaining in their ownership without water—a result that could not have been contemplated or intended. This, we think, is conclusive of the quantity to be delivered, there being nothing in the language of the grant inconsistent with it.

As to the place of delivery it also has a material bearing. It will be observed that the grant does not expressly state where it is to be delivered, nor how the quantity is to be ascertained. No means or mode of measurement were provided at the north line of plaintiff's land, nor was any measurement at that place ever used so far as the record shows. It was to be taken from the reservoir. At that place the capacity of the reservoir, the quantity of water flowing, and the gate by which it was discharged, each or all together, furnished at least an approximate mode of ascertaining the quantity; and in the absence of an express agreement or manifest intention to the contrary must be held to be the place of delivery.

The place of delivery being at the reservoir, the covenant was that Stoneman would " suffer to flow to the parties of the second part . . . . an amount of water equal to two-fortieths . . . . so far as such waters can be brought to the northern line . . . . by the present ditch, or by such further ditch as the party of the first part may hereafter construct."

The place of the sale and delivery of the water being at the reservoir, here was the grant of an easement for its conveyance to plaintiff's land, through which the grantor covenanted he would "suffer the water to flow" over his intervening land.

The grantee, or owner of the easement, is bound to

keep it in repair, and this applies as well to water ditches as to private ways. (*Quinlan* v. *Noble*, 75 Cal. 250 ; *Durfee* v. *Garvey*, 78 Cal. 546.) In *Prescott* v. *Williams*, 5 Met. 429, 39 Am. Dec. 688, a case cited in *Durfee* v. *Garvey*, 78 Cal. 546, it was said: "The duty of making repairs, and the labor necessary for keeping the watercourse in a state fit for use, rests wholly upon him who claims an easement on his neighbor's land; and, as a general rule, easements impose no obligation upon those whose lands are thus placed in servitude to do any thing." (See, also, Goddard on Easements, 285, 443.)

The owner of the servient estate can do no voluntary act to destroy or impair the easement, and hence the grant would not permit the destruction of the ditch then in existence, unless another should be provided, or the grantee should obtain the water from the proposed new reservoir, by a pipe to be laid at the grantee's expense. The fact that the grantor was using this ditch at the date of the grant could not of itself impose upon him the obligation to always continue its use, and the grant contained no express covenant that he would do so, or that he would keep the ditch in repair.

As to the change made by defendant from the wooden flume to the steel pipe, the court correctly charged the jury that she was not bound to maintain precisely the same system of discharging the water from the reservoir, but in the view we have taken as to the place of delivery, the latter part of the instruction should be modified.

The testimony of the engineer who made the change was that the area of the pipe is fifty and one-fourth square inches; that the former dam was low, and at the time the pipe was put in the dam was raised "pretty near five feet," and that with a full reservoir the outlet end of the pipe would discharge two hundred and six miner's inches, and that the capacity of the ditch is about one hundred and fifty miner's inches, and that the pipe would carry the full flow of the water (that

is, the full flow of the water as it rose in the cañon) when the pipe was just covered, and as the head was raised the discharge would be increased.

Whatever an "augmented head" or an "augmented flow" may be held to be, as applied to this case, we think that it must at least be limited by the capacity of the ditch; and by that we mean the capacity of the ditch to carry the water at the upper part of it, and before it is diminished by seepage. If, therefore, the steel pipe which replaced the wooden flume is capable of supplying the capacity of the ditch at or near the head, certainly no more can be required of the defendant, and that the duty rests upon the plaintiff to put and keep the ditch in such condition that it will convey the water his needs require, or adopt some other mode of conveying it. A simple calculation will show the quantity of water to which the plaintiff is entitled.

The deed requires that he shall have it at least once in every ten days. The entire flow is thirty-eight inches. If the entire flow for ten days were accumulated it would equal three hundred and eighty inches for one day. The two-fortieths, or one-twentieth, of that is nineteen inches constant flow for twenty-four hours, to which quantity the plaintiff is entitled; or, if delivered in twelve hours, it would be thirty-eight inches, or the natural flow of the water rising in the cañon for twelve hours in each ten days.

Whether the hydrant attached to the lower end of the pipe is of sufficient capacity to discharge that quantity of water in twelve hours, or less, is a question of fact which ought to be capable of exact ascertainment. The testimony of Mr. Purcell, the engineer who put in the pipe and hydrant, based upon calculation, and not upon actual measurement of the water discharged, would tend to show that the discharge, when the reservoir was full, was largely in excess of thirty-eight miner's inches, and equal to the capacity of the ditch, while the plaintiff contends that the quantity discharged was much less than formerly. Whilst the manner in which the

water was formerly delivered may be conclusive of the question as to plaintiff's right to receive the water in an augmented head instead of a continuous flow of two-fortieths, it is not conclusive of the extent of the augmented flow, but the covenant must have a reasonable construction, since the plaintiff's right is not based upon prescription, but upon a written contract, which requires the water to be delivered "at least once in ten days"; but while the covenant does fix a limit to the quantity that can be used every ten days it does not determine, in terms, whether that quantity shall be discharged in twenty-four hours, or in twelve, or in any less number of hours. All that can be said, as an abstract proposition of law, is that it should be discharged in such volume that, the ditch being in good condition, it will give the plaintiff a reasonable use of the water; not, however, in such volume as a larger ditch would carry, nor such as might be used by a large force of men distributing it, nor yet requiring a larger flow to compensate for the loss of water by reason of the ditch not being in proper condition.

The evidence shows, we think, that the ditch at the times the plaintiff attempted to use it was in bad condition, and if the failure to obtain sufficient water for irrigation was fairly attributable to that cause the plaintiff was not entitled to recover.

The amendment to the complaint was within the discretion of the court and did not prejudice the defendants, and their motion for a nonsuit was properly overruled, inasmuch as there was evidence tending to show that the means of discharging the water from the reservoir into the ditch was inadequate.

The plaintiff was not required to elect upon which count he would proceed, and the ruling of the court thereon was right, and evidence was properly received under paragraph 6 of the complaint.

The remaining specifications of error, so far as the same are important or likely to arise upon a new trial,

are sufficiently noticed and controlled by the general discussion of the controlling questions in the case.

We think the judgment and order appealed from should be reversed, and a new trial granted.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and a new trial granted.

McFARLAND, J., GAROUTTE, J., DE HAVEN, J.

Hearing in Bank denied.

BEATTY, C. J., concurring.—I concur in the order denying a rehearing of this cause; but, as the latter part of the opinion heretofore filed is capable of misconstruction, I wish to explain that I do not understand it to decide that the largest augmented head of water to which the plaintiff is entitled is to be measured by a cumulation of his two-fortieths for ten days. Under the covenant of Stoneman the plaintiff's predecessors had the right to demand water for irrigation as often as once in ten days, but they were not bound to take it that often; and, if it appears that the practice has been to take it at longer intervals and in correspondingly larger heads, and if it also appears that by so doing the plaintiff can irrigate to greater advantage and without laying an unjust burden upon the defendant, the plaintiff should be allowed to take the water in the manner most beneficial to him, and the defendant is bound to provide the means of discharging into the head of the ditch the larger augmented head required.