[L. A. No. 14610. In Bank.—February 29, 1936.]

SOUTHERN PACIFIC COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

W. I. Gilbert and Kenneth Keeper for Appellant.

Ray L. Chesebro and Erwin P. Werner, City Attorneys, Mark L. Herron and J. M. Stevens, Assistant City Attorneys, and Kenneth J. Scott, A. A. Scott, Russell B. Jarvis and Harold L. Green, Deputies City Attorney, for Respondents.

LANGDON, J.—A hearing was granted in this case, after decision by the District Court of Appeal, Second Appellate District, Division One, in order that it might be considered and determined together with *Inyo Chemical Co.* v. *City of Los Angeles*, L. A. No. 14916 (*ante*, p. 525 [55 Pac. (2d) 850]), this day decided. Both cases arise out of the same general event, the break in the Olancha division of the Los Angeles aqueduct on November 26, 1926. Both plaintiffs sought to recover damages alleged to have been proximately caused by the negligence of defendant city in the construction and maintenance of the aqueduct.

In the Inyo Chemical Company case, tried before the late Judge Strother, the court found that the defendant city was negligent, and that its negligence was the proximate cause of plaintiff's injury. The District Court of Appeal, Fourth Appellate District, affirmed the conclusions of the lower court on the general issues of negligence and proximate cause, but

reversed the judgment and remanded the cause for a new trial on the issue of damages. This court has adopted the said opinion of the District Court of Appeal, and thus has approved the determination of the city's liability.

In the instant case, the action was tried before the late Judge Engs. The court found that the defendant city was not negligent, and also concluded that the accident was caused by a cloudburst of such unprecedented violence as to constitute an unforeseeable superhuman cause or act of God. Judgment was rendered against the plaintiff, and was affirmed by the District Court of Appeal, Second Appellate District. Thereafter a hearing was granted in this court.

Upon the hearing of these two cases, we were presented with thorough briefs analyzing and comparing the causes in detail from the point of view of pleading and evidence. We have carefully examined these briefs and have reexamined the earlier ones, and the conclusion is inevitable that the cases are in a practical sense identical. There were some differences in the personnel of the witnesses called by the parties, and in the manner of presenting the evidence. Thus, in the Inyo Chemical Company case, there was detailed testimony as to the amount of curvature in the aqueduct and the grade thereof at the general area of the break, while in the instant case the references to this point were more general. In the Inyo Chemical Company case the pleadings charged specific acts of negligence in some detail, while in the instant case the allegations of negligence were general in character. In the Inyo Chemical Company case, two expert witnesses were produced by the plaintiff who testified that it was not good engineering practice to leave the aqueduct open at a place such as the one where the break occurred, without providing means for carrying away drainage water and debris. In the instant case the opinions of defendant's experts were challenged by evidence of the actual conditions at the place of the break, together with the history of previous rainfall and fills in the aqueduct. But aside from these few differences which would naturally occur in the trial of a cause by different counsel for different plaintiffs, the theories of negligence and proximate cause, and the proof offered in support of them, were substantially the same in each case. The known facts as to the surrounding area, the construction of the aqueduct, the place

of the break and the actual cause thereof are, of course, undisputed; and evidence as to previous rainfall in the area and previous filling of parts of the aqueduct with debris was presented by the plaintiffs in each case. Indeed, the defendant city in its briefs comparing the two cases has emphasized this very point of substantial similarity, and has urged this court to exercise its reviewing power to harmonize the conflicting conclusions of the two District Courts of Appeal.

It would be most anomalous for such decisions to stand, reaching diametrically opposite conclusions as to the legal effect of the same occurrence, where the essential facts are similarly presented, and are in most particulars undisputed. The rule that a reviewing court is bound by the findings of the trial court on conflicting evidence cannot apply to a situation such as this, where two lower courts, dealing with substantially the same evidence, have reached different conclusions of law, on the legal issue of whether from this evidence legal responsibility is imposed by the law upon the defendant. It is within the proper function of this court, upon petition for hearing, to eliminate this confusion, and to determine the legal effect of the evidence in both cases. This we have done in our adoption of the opinion of the District Court of Appeal in the Inyo Chemical Company case, which fully reviews the evidence and reaches the conclusion that the defendant city is liable. We refer to that opinion for a complete discussion of the reasons for our present holding.

Two points may, however, be emphasized at this time. The first is that the testimony of defendants' experts that the aqueduct at the point of the break was constructed in accordance with standard engineering practice is, of course, only opinion evidence which is not conclusive either upon the trial court or an appellate court. The precise situation involved herein, with respect to the drainage area, the formation of the cone and its materials, the kind of rainfall in the territory, and previous experience with debris after rainfall, could hardly have been exactly duplicated elsewhere. The expert opinions were that in such territory with such history the aqueduct was constructed in accordance with standard practice, but because the conditions to which such standard practice is applicable are necessarily variable, it is both proper and essential to examine these opinions in the light of the actual

physical circumstances, and of the prior history of the area. Upon such examination, we think it must be concluded that to leave an open aqueduct with considerable curvature and a slow grade in a position below a large steep cone of loose materials, in a territory where heavy and at times torrential rains have been known to occur, without any provision for spillways or other drainage methods, constitutes negligence.

The second point which deserves brief mention herein is that a rainstorm which is merely of unusual intensity is not a "superhuman" cause or act of God, superseding the original negligence as the proximate cause of the injury. There is nothing in the nature of the rainstorm involved in this case which makes it so totally unforeseeable as to act as a superseding cause. It was simply a heavy rain, commencing and continuing for several days, and perhaps it established a record for volume in inches in that region. But it cannot be concluded from this fact that the cause was wholly unforeseeable. Rainfall is foreseeable in most places; and heavy rainfall was characteristic of that region. There is no point at which an expectable heavy rain becomes an act of God by reason of its unusual volume. Both with respect to the issues of negligence and proximate cause, the foreseeability of unusual rainfall was clearly established by the evidence, and called for some precautions by way of overhead or underground drainage to meet the requirement of reasonable care under the circumstances.

The judgment is reversed.

Thompson, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.