[L. A. No. 22313.   In Bank.   July 7, 1953.]

LEONARD F. HERZOG et al., Respondents, v. PAUL J. GROSSO et al., Appellants.

221

W. P. Smith and Henry F. Walker for Appellants.

Nathan E. Gillin and Button & Herzog for Respondents.

TRAYNOR, J.—This action presents a controversy between owners of a private road and easement and the owners of the servient tenement. The following diagram, not drawn to scale, shows the relationship of the road and easement to the parcels of land involved.

Mrs. Mildred Schneider originally owned the land bounded by Blair Drive, Hollywood Freeway, the Rosin property, and the Universal Pictures property. The land is hilly with the crest of the hill at the center. Plaintiffs Leonard and Alma Herzog purchased parcel 1 in 1944 and built a home thereon. At that time the only access to a public road from parcel 1 was a road over the Rosin property to Barham Boulevard. Since Rosin retained the right to revoke permission to use the road, plaintiffs did not buy parcel 1 until Mrs. Schneider deeded to them parcel 2, a strip of land 25 feet wide, and granted them an easement for road and public utility purposes over parcel 3, a strip of land 30 feet wide and 155 feet long. A road was bulldozed around the hill on parcels 2 and 3 from parcel 1 to Blair Drive. A telephone pole was erected on parcel 3 at the point marked "x" on the diagram, about 115 feet from Blair Drive. The road was dirt surfaced, about 14 feet wide, and sloped downhill from Blair Drive to plaintiffs' home. The grade was about 4.5 per cent to the telephone pole and about 8.3 per cent for the next 110 feet. Plaintiffs used both the Rosin road to Barham Boulevard and the new road to Blair Drive.

Mr. and Mrs. Connor bought the property to the west of parcels 2 and 3 in December, 1945. Defendants Paul and Madolyn Grosso acquired parcel 3 and the hilltop property in March, 1949. Difficulties between defendants and plaintiffs soon arose. In November, 1949, Paul Grosso regraded the road from his property to Blair Drive. He dumped large quantities of dirt on parcels 2 and 3 and on the Connor property.* The regrading resulted in a fill that blocked all passage from plaintiffs' property to Blair Drive. Plaintiffs protested and were assured that the road would eventually be made passable, but it remained blocked. In March, 1950, defendants erected a fence at the point where parcel 3 joined Blair Drive. The fence extended across 14 feet of the easement and was equipped with gates designed to close the remaining 16 feet.

On September 2, 1950, plaintiffs received notice that they could no longer use the Rosin road. Thereafter their only access to the public streets was over parcels 2 and 3. After further protests by plaintiffs, Grosso cut a ramp across the fill to parcel 2. The new road ran on the west side of the

---

*An action by Mrs. Connor against the Grossos for the dumping on the Connor property was consolidated for trial with the present case. (See *Connor* v. *Grosso, post,* p. 229 [259 P.2d 435].)

telephone pole, on the Connor property. The road was narrow, steep, and dangerous. In early October Herzog placed posts and reflectors along the edge of the road to prevent automobiles from going over the bank. Grosso removed the posts and reflectors. In November, 1950, plaintiffs engaged a contractor to pave parcels 2 and 3. Grosso ordered the men to leave and when they did not do so, dumped dirt on the parts of the road that had been fine graded preparatory to final surfacing. Several days later Grosso dug up the road with a plow attached to a tractor. On December 20th, plaintiffs obtained a temporary restraining order, and thereafter Grosso did not interfere with plaintiffs' use of the road. In February, 1951, plaintiffs paved the road and placed it in the condition it was in at the time of the trial, May, 1951. During the period between September, 1950, and February, 1951, it was difficult to use the road. In rainy weather the road was slippery, and plaintiffs were forced to leave their car at the entrance and walk through the mud.

The road was surveyed shortly before the trial. The grade over the fill made by Grosso was level for the first 68 feet from Blair Drive, thence 4.3 per cent uphill to a point near the telephone pole, thence 14.6 per cent downhill for the next 110 feet. One 40-foot part of this 110 feet had a grade of 17.2 per cent. At the telephone pole the fill was 6 feet over the original level. An appraiser, duly qualified as an expert witness, testified that ''the steep grade immediately approaching the short turn and a steep incline is sufficient cause for an estimate of damage. This condition creates an extreme fire hazard and safety hazard to all users.'' He stated that the road was ''like driving into the banks of the Grand Canyon.'' The appraiser testified that in his opinion the increase in grade had depreciated the fair market value of the property by $8,700.

The trial court entered judgment in favor of plaintiffs. The judgment declares plaintiffs' and defendants' respective rights in the easement; orders defendant Paul Grosso to alter the first 120 feet of parcel 3 to conform to a map attached to the judgment; orders defendants to remove the fence and gate at the entrance; and enjoins defendants from interfering with plaintiffs' use of the easement. The judgment also awards plaintiffs damages against defendant Paul Grosso as follows: $7,000 to both plaintiffs for permanent depreciation in the value of their property; $521.82 to both plaintiffs as

compensation for miscellaneous expenditures; $2,000 to plaintiff husband and $2,000 to plaintiff wife for interference with their comfortable use and enjoyment of their home; $1,500 to plaintiff husband and $1,500 to plaintiff wife for worry and anxiety for the safety of themselves, their daughter, and their guests; $2,000 to plaintiff husband and $2,000 to plaintiff wife as exemplary damages. Defendants appeal from the judgment.

The judgment provides that defendants do not have "any estate, right, title or interest whatsoever in and to said easement" and that defendants "are hereby forever enjoined and restrained from asserting any claim whatsoever in and to plaintiffs' said easement." Defendants contend that the decree unduly restricts their rights in parcel 3, that it is the only means of access to Blair Drive for themselves and their employees, agents, guests, and deliverymen, and that they have to use parcel 3 to obtain water, telephone, electricity, gas and other public utility facilities. Other parts of the judgment provide that defendants are the owners "in fee simple of the thirty foot strip of land in, upon, under and over which plaintiffs' said easement described in said parcel 3 extends"; that defendants have the right to use parcel 3 for road purposes; and that defendants may use parcel 3 for other purposes "consistent with the employment of said easement by plaintiffs and which does [not] unreasonably interfere with the use of said easement by plaintiffs." It thus appears that the judgment does not unreasonably restrain defendants from the use of parcel 3.

▇ The judgment declares that defendants have no right to maintain the fence and gates at the juncture of the road and Blair Drive and orders their removal forthwith. Defendants contend that the trial court erred, relying on the rule that "the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*Pasadena* v. *California-Michigan etc. Co.,* 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186].) The trial court found that the fence and gates interfered with plaintiffs' free use and enjoyment of the easement. Plaintiffs' home is located in a large city and the road should be kept unobstructed for adequate access by the fire department, police department, and other public agencies. (*Cf.* Los Angeles City Ordinance 97940, § 18.09.) The trial court did not go beyond the evidence in this case by ordering the removal of the fence and gates. (See *Smith* v. *Worn,* 93 Cal.

206, 214-215 [28 P. 944].) Defendants suggest that they should be allowed to maintain the gates and fence to prevent motorists from mistaking the road for a public road and entering defendants' property. Plaintiffs concede that defendants are "free to put up any sign deemed necessary as would not unreasonably interfere with plaintiffs' use of the easement." It would appear that defendants could thus be adequately protected.

The judgment provides that "plaintiffs have a right to construct and maintain a wooden guard rail on parcel 3 along the northwesterly boundary thereof, said guard rail to be one of the general types usually used along public highways." Defendants contend that the judgment thereby unduly burdened the servient tenement. By the grant of the easement, however, plaintiffs acquired the right to do such things as are reasonably necessary to their use thereof. (*Ward v. City of Monrovia,* 16 Cal.2d 815, 821-822 [108 P.2d 425]; *North Fork Water Co. v. Edwards,* 121 Cal. 662, 666 [54 P. 69]; 28 C.J.S., Easements, § 76b.) Since the road adjoins a steep embankment, guardrails are reasonably necessary and would not unduly burden the servient tenement.

The trial court found that "as a direct, natural and proximate result and consequence of the acts and conduct of the defendant . . . each of said plaintiffs were caused further to suffer nervousness, worry, and mental distress for the safety of themselves and their daughter and others obliged to use said road on account of the dangerous conditions under which said defendant, Paul J. Grosso, forced them and their family to use said parcels 2 and 3 in going to and from their said home." Damages of $1,500 were awarded to each plaintiff. Defendant contends that the award cannot be sustained insofar as it is predicated upon distress and worry for "the safety of . . . their daughter and others." Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom. (*Anderson v. Souza,* 38 Cal.2d 825, 833 [243 P.2d 497]; *Judson v. Los Angeles Suburban Gas Co.,* 157 Cal. 168, 172 [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A.N.S. 183]; *Thompson v. Simonds,* 68 Cal.App.2d 151, 162 [155 P.2d 870]; Rest., Torts, § 929(c), com. g.) In *Alonso v. Hills,* 95 Cal.App.2d 778 [214 P.2d 50], an action for damages resulting from blast-

ing operations, the court sustained an award for discomfort, fright, and shock caused by a blast that occurred at a time when plaintiff was not at home. The court stated: ''Plaintiff testified that after the February 3 blast (in which a rock destroyed a bench on the property near which one of his daughters was standing) he could not rest or sleep because of fear for his own security and that of his family. This is a form of discomfort for which plaintiff under the circumstances of this case is entitled to recover, as well as for other discomfort not challenged on appeal.'' (95 Cal.App.2d at 788.) ■ Similarly, in the present case the suffering caused by fear for the safety of the daughter and visitors was a natural consequence of defendant's conduct and an invasion of a protectible interest of an occupant of real property. The cases relied upon by defendant did not involve an invasion of a protectible interest in real property and are therefore not controlling here.

The judgment awarded plaintiffs $7,000 against defendant Paul Grosso for the permanent depreciation in the value of their property resulting from the increased grade of the road. Defendant asserts that removal of about 700 cubic yards of dirt would restore parcels 2 and 3 to their original condition. Defendant then contends that the trial court awarded excessive damages, on the ground that when the cost of restoration is less than the depreciation in value, the former is the measure of damages. (*Cf. Green* v. *General Petroleum Co.*, 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475].) This contention cannot be sustained. ■ Plaintiffs established their damages by showing the depreciation in value. It was then incumbent upon defendants to come forward with proof that the cost of restoration would be less. (*Perkins* v. *Blauth,* 163 Cal. 782, 792-793 [127 P. 50].) They failed to do so. Defendants point out that in the companion case of *Connor* v. *Grosso, post,* p. 229 [259 P.2d 435], the trial court found that the cost of removal of 3,184 cubic yards of dirt from the Connor property would be $4,362.08, and that the cost of removing 1,570½ cubic yards therefrom would be $2,563.85. ■ Defendants rely on decisions holding that an appellate court will not permit a trial court to reach diametrically opposite conclusions upon similar evidence as to the same occurrence. (*Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773, 780 [135 P.2d 569] ; *Southern Pac. Co.* v. *City of Los Angeles,* 5 Cal.2d 545, 548 [55 P.2d 847].) That rule is inapplicable when the two decisions may be

reconciled. (*Dillard* v. *McKnight*, 34 Cal.2d 209, 224-225 [209 P.2d 387, 11 A.L.R.2d 835].) In the companion case the dirt could be removed from the side of a hill; in the present case the dirt would have to be taken from a narrow road where equipment would have difficulty in operating. In addition to the cost of removing the dirt defendant in the present case would have to regrade and resurface the road and provide for drainage. ▮ Aside from the evidence in the Connor case, there is no evidence in the record showing the cost of restoring parcels 2 and 3 to their original condition. Thus, we cannot say as a matter of law that the award of $7,000 is excessive.

In addition to the award of $7,000 as damages for permanent depreciation of plaintiffs' property, the judgment orders defendant Paul Grosso to "make alterations in the road over and upon the northerly 120 feet" of the easement "so that same will conform to and be in accordance with the plan shown on the aforesaid Private Street Map, plaintiffs' Exhibit No. 60." Defendant contends that the judgment thereby allows a double recovery to plaintiffs, on the ground that the mandatory injunction requires defendant to correct a condition for which plaintiffs are awarded damages. (See *Spaulding* v. *Cameron*, 38 Cal.2d 265, 269 [239 P.2d 625].)

It is contended that any error in the judgment may be cured by deleting the injunction. ▮ If the injunction applies to an encroachment for which a money judgment is awarded, the trial court in effect made conflicting findings, first that the injury to plaintiffs' property was abatable, and then that it was permanent. In that event, unless the evidence established as a matter of law that the injury was or was not permanent, reversal would be necessary, since "it would be inappropriate for this court to determine whether the nuisance is in fact permanent and to modify the judgment by striking the damages for loss of market value on the assumption it is not permanent, or by striking the injunctive provisions on the assumption that it is. (*Tupman* v. *Haberkern*, 208 Cal. 256, 269-270 [280 P. 970].)" (*Spaulding* v. *Cameron*, *supra*, 38 Cal.2d at 270.) Accordingly, the determinative question here is whether the mandatory injunction applies to a condition for which plaintiffs are also awarded damages.

▮ Before defendant Paul Grosso placed the dirt on parcels 2 and 3, the grade of the road averaged 4.5 per cent

downhill from Blair Drive to a point near the telephone pole, about 115 feet from Blair Drive, and averaged about 8.3 per cent downhill over the next 110 feet. After defendant changed the slope of the road, the grade was level for the first 68 feet from Blair Drive, thence about 4.3 per cent uphill to a point near the telephone pole, and thence downhill for 110 feet at an average grade of 14.6 per cent and of 17.2 per cent for 40 of the 110 feet. The fill was 6 feet deep at the telephone pole. From the testimony of the engineer who prepared the map referred to in the injunction and from an examination of the map itself, it is clear that altering the road to conform to the map will do nothing more than remove the hump in the first part of the road. Compliance with the injunction will not change the steep slope on the remainder of parcel 2 and parcel 3. There is no inconsistency in finding that some of the dirt dumped on plaintiffs' property may be removed and that other dirt dumped in a different place permanently depreciated the property. The award of $7,000 damages is based on the testimony of H. V. Johnson, an appraiser. That witness based his opinion on the steepness of the road, not upon the hump in the first part of the road. The mandatory injunction and the award of damages thus apply to separate results of defendant's conduct.

Defendant Paul Grosso contends that the trial court erred in ordering him to pave the north part of the road after altering it to conform with the map attached to the decree. This contention must be sustained. When defendants purchased their property, plaintiffs had a dirt surfaced road on the easement. Ordinarily, the owner of the servient tenement is under no duty to maintain or repair the easement. (*Bean* v. *Stoneman*, 104 Cal. 49, 56 [37 P. 777, 38 P. 39]; *Rose* v. *Peters*, 59 Cal.App.2d 833, 835 [139 P.2d 983].) Defendant may be required to alter the north 120 feet of the road to conform with the map, but he may not be required to pave the road for the benefit of plaintiffs.

The judgment is modified by deleting that part of paragraph 19 reading: ''and that wherein said map does not specify the details of construction of said road said defendants shall construct said road in accordance with the requirements of Standard Specifications No. 151 for Public Improvement as promulgated by the Department of Public Works of the City of Los Angeles, California, and approved by the Council of said City under date of May 15, 1951, and now

in effect.'' As so modified the judgment is affirmed. Defendant Paul Grosso is to bear the costs of this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.