Filed 4/25/13  MacKenzie v. Madden CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| R. BRUCE MacKENZIE et al., <br><br>   Plaintiffs, Cross-defendants, and Respondents, <br><br> v. <br><br> JOSEPH E. MADDEN et al., <br><br>   Defendants, Cross-complainants, and Appellants. | 2d Civil No. B234252 <br> (Super. Ct. No. 1338982) <br> (Santa Barbara County) |

Respondents R. Bruce and Louise MacKenzie and their neighbors, including appellants Joseph E. and Christy Madden, all have a private road easement incident to the ownership of their respective parcels.  To protect against flooding from an adjacent creek and provide privacy to their road, respondents and a group of their neighbors placed a berm, rocks and hedges along the outer edge of the parcel of property owned by appellants, who live on the other side of the creek and reach their residence from a different road.  Appellants did not approve of the changes and litigation ensued. Following a three-day bench trial that included a visit to the site, the trial court found the improvements were a proper exercise of respondents' rights and duties under a right-of-

way easement and accordingly entered judgment in their favor. Appellants contend the court's ruling is legally and factually erroneous. We affirm.

## FACTS AND PROCEDURAL HISTORY

La Vuelta Road (La Vuelta or the road) is a "u"-shaped road in Montecito that begins and ends at two points along North Jameson Lane, which runs parallel to Highway 101. The road was created in 1921 pursuant to a survey subdivision map of the "Hermosa Vista Property," which includes part of the San Ysidro Creek (the creek).[1] The subdivision consists of 16 parcels, all but one of which are bounded on one side by the centerline of La Vuelta. Thirteen of the parcels are entirely east of the creek, while two of the remaining parcels begin west of the creek and extend eastward over the creek to the centerline of La Vuelta.[2] The owner of each parcel of property that includes a portion of La Vuelta also owns a 30-foot wide easement (the La Vuelta easement or the easement), which gives them "a right of way for all of the uses and purposes of a private roadway."

Over the years, the residents of the subdivision have treated La Vuelta as a private road and have borne all responsibility for its maintenance and repair. "Private road" signs have been at both ends of the road for the past several decades.

For the last 25 years, respondents have lived on the parcel of property that runs east from the centerline of La Vuelta at its western entrance. In 1995, appellants purchased the southernmost parcel of property that begins east of the creek and extends eastward to the centerline of La Vuelta. Their residence is east of the creek and is reached by a different road.[3] The property is roughly the shape of an "upside-down" right triangle. The southernmost point of the property, which is wedged between the

---

[1] When the map was created, Jameson Lane was part of Pacific Coast Highway.

[2] The last parcel, which is depicted in the northwest corner of the subdivision map, lies west of the creek and does not include any portion of La Vuelta.

[3] Appellants' property and the other two Hermosa Vista parcels west of La Vuelta are accessed by Tiburon Bay Road and bear addresses for that road.

creek and the western edge of La Vuelta, is approximately 81 feet long. The portion of appellants' property in this area that is not part of the La Vuelta roadway easement, which the trial court accurately characterized as "icicle"-shaped, is approximately four feet at its widest and gradually narrows to a width of about one inch until it ends to the west of respondents' driveway.

Although appellants cannot access their property from La Vuelta by vehicle, Joseph Madden often parks vehicles along the road and during dry times often hikes through the creek bed to reach the bus stop on Jameson. Christy Madden has also been known to traverse the creek bed to reach the home of her parents, who live on La Vuelta.

In recent years, heavy rains have caused the creek to swell and flood La Vuelta from the southernmost area of appellants' property and a small triangular-shaped property to its south that is owned by a third party. After Jameson Lane was widened in 2007, respondents and their neighbors noticed an increase in motorists attempting to use La Vuelta as an alternate route only to discover that it ends on Jameson, very near their starting point. Motorists were also cutting across the triangular-shaped property to obtain access to La Vuelta.

To address these concerns, respondents and a majority of their neighbors decided to place electronic gates at both entrances to La Vuelta. They also undertook to place a berm, rocks, and hedges within the La Vuelta easement along the edge of the road where the flooding occurs, which includes a portion of the narrow southernmost strip of appellants' property. Appellants were included in all of the discussions, and initially did not contest the changes. After respondents obtained permits and began installing the gate columns, however, appellants complained to the County of Santa Barbara (the County) that one of the columns was on their property. The County took no action because neither of the columns were on appellants' property and did not interfere with the County's property rights.

Appellants also challenged the placement of the berm, rocks, and hedges on their property. After appellants stated their intent to remove the improvements and

3

replace them with a chain link fence and gate, respondents filed a complaint for declaratory and injunctive relief. Following the sustaining of a demurrer, respondents filed an amended complaint to which a demurrer was overruled.[4] Appellants filed a cross-complaint seeking declaratory and injunctive relief and damages for trespass.

Following a bifurcated trial on the equitable claims, the court found in favor of respondents. In its statement of decision, the court indicated that "the foundation" for its ruling was the language in appellants' own deed describing the easement at issue as "a right of way for all of the uses and purposes of a private roadway." Based on this language, the court found "that the berm, boulders and hedge are all appropriate additions to the land, as they add true and necessary protection to the roadway for the common good in the prevention of flooding, and which do very little if anything at all to interfere with [appellants'] permissible use of the easement area for parking. It is obvious that Mr. Madden won't be able to walk from the creek bed through the hedge to get to the bus stop, but he still has a clear pathway from the creek bed up to Jamison Road [*sic*] on the north side of the hedge." The court further found that "the improvements pose the least burdensome interference with [appellants'] use of their property, consistent with their obligations under the easement. The Court is impressed with the creativity and restraint shown by the builder. The improvements were carefully placed within [appellants'] land over which the easement runs. No part of the improvements encroaches on the unencumbered parts of their property."

The court also found that appellants' proposed construction of a chain-link fence along the easement was inconsistent with respondents' rights under the easement, and accordingly ruled that appellants "have lost the right to erect a fence, gate, or bridge on their property within the area of the easement." The court noted that it "did not

---

[4] The amended complaint also named Charles Crail as a defendant. Crail owns the parcel of property west of appellants' property. Crail's property is not part of the Hermosa Vista subdivision. He was sued after respondents discovered he was planning to give appellants an easement that would have allowed them to build a bridge over the creek, with the theoretical purpose of obtaining vehicle access to their property from La Vuelta. Crail was dismissed from the case pursuant to a settlement in which he agreed to refrain from offering any easement to appellants.

4

engage further in a weighing process, balancing hardship against benefit, as it is not necessary to do so where the evidence is so compelling as to prompt a determination that there is virtually no interference with [appellants'] historical use of this tiny 'icicle' of land which has always been subject to the easement."

In its judgment, the court declared that respondents had the right to maintain the subject improvements and that appellants were prohibited from removing them or erecting a fence within the area of the easement. The judgment further gives respondents the right to complete the gate project subject to the County's approval.[5] The court declined respondents' request that it issue a further declaration "that they have the right, at some future unspecified time, to add to any of the improvements which are the subject of this suit. Such relief is speculative and beyond the scope of this proceeding." Appellants timely appealed following the denial of their motion for a new trial.

DISCUSSION

Appellants claim (1) the berm, rocks, and hedge respondents placed within the La Vuelta right-of-way easement on appellants' property are unlawful because La Vuelta is a public road; (2) the court erred in finding the road is private based solely on language included in the deed to appellants' property; and (3) the improvements in any event go beyond the scope of respondents' easement. None of these claims has merit.

In its ruling, the court found that whether La Vuelta was offered or accepted for dedication as a public road is essentially irrelevant to the issue whether respondents had the right to maintain the road pursuant to the grant of a private easement. The law is in accord. Over 100 years ago, our Supreme Court stated: "It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a

_____

[5] Appellants will be given a key to open the gate once it is installed. According to respondents' representation, pedestrians will still be able to access the road through a pedestrian gate at the southwest end.

5

private way, and that this private easement is entirely independent of the fact of dedication to public use . . . ." (*Danielson v. Sykes* (1910) 157 Cal. 686, 689 (*Danielson*).) For this reason, it is also irrelevant whether deeds to some of the parcels did not include express references to this type of easement.

The only issue remaining for our review is whether the court erred in finding that the subject improvements were within the scope of the easement. To the extent the existence or scope of an easement hinges on findings of fact, we review the trial court's findings for substantial evidence. (See *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.)

As we have noted, respondents are entitled to use the La Vuelta easement "for ingress and egress and for any use proper to a private way . . . ." (*Danielson, supra*, 157 Cal. at p. 689.) It has long been settled that the right to use property for road purposes includes "a right to make necessary and reasonable improvements for the purpose for which it was intended to be used." (*Zimmerman v. Young* (1946) 74 Cal.App.2d 623, 628; see also *Healy v. Onstott* (1987) 192 Cal.App.3d 612, 617; 6 Miller & Starr, Cal. Real Estate (3d ed. 2006) Easements, § 15:67, pp. 15-223 & 15-224.) Substantial evidence supports the court's finding that the subject improvements were reasonable and necessary to prevent the creek from flooding La Vuelta and provide privacy and security from drivers who were attempting the access the road through that area. Substantial evidence also supports the finding that the improvements were minimally intrusive and placed the least possible burden on appellants' property.

Appellants' reliance on *Herzog v. Grosso* (1953) 41 Cal.2d 219 (*Herzog*), is unavailing. In *Herzog*, the owners of a servient tenement were sued for interfering with the dominant tenement owners' use of an easement, consisting of a private road near Universal Studios that had been provided to them by a prior owner. The trial court entered a judgment in favor of the plaintiffs that required the defendants to, among other things, remove a gate and fence they had erected at the entrance to the road. (*Id.* at p. 224.) In affirming, the Supreme Court adopted the trial court's findings "that the fence and gates interfered with plaintiffs' free use and enjoyment of the easement. Plaintiffs'

6

home is located in a large city and the road should be kept unobstructed for adequate access by the fire department, police department, and other public agencies. [Citation.]" (*Ibid.*) The opinion goes on to state: "Defendants suggest that they should be allowed to maintain the gates and fence to prevent motorists from mistaking the road for a public road and entering defendants' property. Plaintiffs concede that defendants are 'free to put up any sign deemed necessary as would not unreasonably interfere with plaintiffs' use of the easement.' It would appear that defendants could thus be adequately protected." (*Id.* at p. 225.)

As relevant to the instant case, the court in *Herzog* also affirmed the judgment to the extent it gave the plaintiffs the right to construct and maintain a wooden guard rail along one side of the easement. In rejecting the defendants' claim that this aspect of the judgment unduly burdened the servient tenement, the court reasoned: "By the grant of the easement, however, plaintiffs acquired the right to do such things as are reasonably necessary to their use thereof. [Citations.] Since the road adjoins a steep embankment, guardrails are reasonably necessary and would not unduly burden the servient tenement." (*Herzog, supra*, 41 Cal.2d at p. 225.) As we have explained, the particular facts of this case support the court's finding that respondents' improvements, including the columns and gate, were reasonably necessary to their use and enjoyment of La Vuelta and did not unduly burden appellants' use of their property.

Appellants also rely on *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697 (*Scruby*), for the proposition that "[t]he conveyance of an easement limited to roadway use grants a right of ingress and egress and a right to unobstructed passage to the holder of the easement. A roadway easement does not include the right to use the easement for any other purpose." (*Id.* at p. 703.) The easement in *Scruby*, however, was merely "for road and utility purposes." (*Ibid.*) Respondents' easement is not so limited. (*Danielson, supra*, 157 Cal. at p. 689.) Moreover, the primary issue in *Scruby* was whether a winery's placement of grapevines within the dominant tenement owner's 52-foot wide roadway easement unreasonably interfered with the use of said easement. (*Scruby,* at p. 700.) The trial court's affirmative finding on that issue was

7

supported by substantial evidence and was thus upheld on appeal. (*Id.* at p. 705.) The trial court's finding that the dominant tenement holder's pavement of a portion of the easement "was not incident to the reasonable repair and maintenance of the easement" was similarly upheld. (*Id.* at p. 707.)[6] Substantial evidence also supports the contrary findings at issue in this case.[7]

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

---

[6] The trial court's finding was based on evidence that before the dominant tenement holder (Scruby) paved a strip of property near the entrance to the easement from the highway, he had been informed that the winery's use permit required that the entrance be moved farther south along the highway to allow a proper turning radius from the highway to the winery property. After viewing the scene, the trial court also found "'that for safety reasons a single entrance to the winery property is essential.'" (*Scruby, supra*, 37 Cal.App.4th at p. 707.)

[7] For the first time in their reply brief, appellants refer us to *Buechner v. Jonas* (1964) 228 Cal.App.2d 127. The only relevant similarity between *Buechner* and the instant case is that both involved a dominant tenement holder's placement of a hedge in a roadway easement. In *Buechner*, the primary issue was whether the dominant tenement holder had either extinguished or limited her right to use the easement by planting the hedge. (*Id.* at p. 130.) Moreover, the dominant tenement holder never claimed any right to maintain the hedge, which the trial court found "was purely ornamental and temporary." (*Id.* at pp. 129-130.) The facts and issues in this case are plainly dissimilar. *Cottonwood Duplexes v. Barlow* (2012) 210 Cal.App.4th 1501, which was issued after appellants filed their reply brief, is also inapposite. In that case, the court framed the issue as "whether a court can partially extinguish a granted easement if the evidence shows that the owner of the dominant tenement does not reasonably need, either now or in the future, the entirety of the easement . . . ." (*Id.* at p. 1508.) The court's ruling in this case neither expressly nor implicitly extinguished any portion of either party's easement.

8

Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____

Law Office of John C. Lauritsen, John C. Lauritsen; Law Office of Mark D. Jamison and Mark D. Jamison for Appellants.

Richardson, Fair & Cohen, Manuel Dominguez; Law Offices of Bruce MacKenzie and Bruce MacKenzie for Respondents.